[No. C061782. Third Dist. Oct. 27, 2010.]

JOSHUA LICKTER et al., Plaintiffs and Appellants, v.
MAGGIE LICKTER, as Trustee, etc., et al., Defendants and Respondents.

COUNSEL

Weintraub Genshlea Chediak, Charles L. Post, Edward J. Corey and Jamay Lee for Plaintiffs and Appellants.

Knudtson & Nutter, Gigi M. Knudtson, Melissa L. McDonald; Powers & Miller, Robert James Miller, Gordon W. Bowley; Spiller McProud and Steven T. Spiller for Defendants and Respondents.

OPINION

**ROBIE, J.**—The primary issue in this case is who is entitled to commence and/or maintain an elder abuse action after the elder who was allegedly abused has died. Generally, "the right to commence or maintain [such] an action . . . pass[es] to the personal representative of the decedent." (Welf. & Inst. Code, § 15657.3, subd. (d)(1).) However, "[i]f the personal representative refuses to commence or maintain an action or if the personal representative's family or an affiliate . . . is *alleged to have committed abuse of the elder*" (italics added), then the Legislature has granted "standing to commence or maintain an action for elder abuse" to "[a]n intestate heir whose interest is affected by the action," "[t]he decedent's successor in interest," or "[a]n interested person, as defined in Section 48 of the Probate Code [with certain limitations not applicable here]." (*Id.*, subd. (d)(2) & (1).)

Here, plaintiffs Joshua and Jezra Lickter sued their father (Robert Lickter), their half sisters (Maggie and Kate Lickter), and their half sisters' mother (Mary McClain) for elder abuse and other related causes of action that had belonged to their grandmother (Robert's mother), Lois Lickter, when she died.[1] Plaintiffs claimed they had standing to commence and maintain the action under Welfare and Institutions Code section 15657.3, subdivision (d).

Defendants moved for summary judgment based on lack of standing. In defendants' view, plaintiffs would have standing to sue on Lois's causes of action only if Robert, Maggie, and Kate all were deemed to have predeceased

---

[1] To the extent possible, we will refer to the parties collectively by their litigation designations in the trial court (plaintiffs and defendants). To the extent we must refer to the parties individually, however, we will use their first names to avoid confusion and for consistency's sake. Although plaintiffs sued Kate as "Katie," we refer to her as "Kate" because that is how she referred to herself in the trial court.

Also, we note that Robert died after this appeal was commenced, and we subsequently issued an order substituting Maggie, in her capacity as trustee of Robert's trust, in place of Robert as a defendant and respondent.

Lois pursuant to Probate Code section 259,[2] because only then would plaintiffs be left "as successors-in-interest to [Lois's] estate." Applying the elements of Probate Code section 259 to establish plaintiffs' lack of standing, defendants offered evidence and argued that none of them committed elder abuse against Lois and that none of them acted in bad faith or with recklessness, malice, oppression, or fraud.

In response, plaintiffs argued there was "no need for th[e] Court to delve into 'who predeceases whom' for purposes of standing" because they had standing as "interested persons" under subdivision (d)(2) of Welfare and Institutions Code section 15657.3 because they were beneficiaries of Lois's trust.

The trial court agreed with defendants that plaintiffs would have standing only if Robert, Maggie, and Kate all were deemed to have predeceased Lois under Probate Code section 259. Applying the elements of Probate Code section 259, the court went on to conclude there was no triable issue of fact as to whether Kate was liable for elder abuse or as to whether she acted in bad faith or engaged in reckless, malicious, oppressive, or fraudulent conduct. Accordingly, because Kate could not be deemed to have predeceased Lois under Probate Code section 259, plaintiffs were not Lois's heirs and therefore lacked standing to pursue the action.

On plaintiffs' appeal from the summary judgment in favor of defendants, we find no prejudicial error. As we will explain, just because plaintiffs were beneficiaries of Lois's trust did not make them "interested persons" for purposes of pursuing this elder abuse action under subdivision (d) of Welfare and Institutions Code section 15657.3. To be an "interested person" for purposes of instituting or participating in a particular proceeding under Probate Code section 48—and, by extension, under subdivision (d) of Welfare and Institutions Code section 15657.3—the person must have an interest that may be impaired, defeated, or benefited by the proceeding. Plaintiffs were *former beneficiaries* of Lois's trust, as they already had been paid the amounts they were owed under the trust. Thus, plaintiffs had no such interest in this elder abuse action.

Indeed, the trial court was correct in concluding that the only way plaintiffs would have standing to pursue this action was if they succeeded to Lois's causes of action because Robert, Maggie, and Kate all were deemed to have predeceased Lois under Probate Code section 259. Because there was no

---

[2] As explained further below, under certain circumstances described in Probate Code section 259, a person found liable for elder abuse of a decedent cannot receive any property, damages, or costs that are awarded to the decedent's estate in an elder abuse action because that person "shall be deemed to have predeceased [the] decedent." (Prob. Code, § 259, subd. (a).)

triable issue of fact as to whether Kate acted in bad faith or engaged in reckless, malicious, oppressive, or fraudulent conduct, Kate cannot be deemed to have predeceased Lois under Probate Code section 259, plaintiffs did not succeed to the causes of action they sought to pursue in this action, and therefore the trial court correctly concluded they lacked standing.

We also conclude that even if the trial court erred in denying plaintiffs' motion to compel Kate to answer certain deposition questions, plaintiffs have failed to show any prejudice from that error because they have failed to show it is reasonably probable they could have avoided summary judgment if the trial court had compelled Kate to answer. Accordingly, we will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are largely irrelevant. For our purposes, it is sufficient to say that Lois died in August 2007 at the age of 91, leaving property in a trust, of which Robert became the trustee.[3] The terms of the trust provided that upon Lois's death, $10,000 each would be distributed to plaintiffs and the entire residue of the trust would then be distributed to Robert. If Robert predeceased Lois, the residue was to be distributed to Maggie and Kate. If Maggie and Kate also predeceased Lois, the residue was to be distributed to their children or, if none, to Lois's living children by right of representation.

Because Robert was Lois's only surviving child, and because neither Maggie nor Kate had children, the residue of Lois's trust would be distributed to plaintiffs under the terms of the trust if Robert, Maggie, and Kate all were deemed to have died before Lois.

Shortly after Lois's death, plaintiffs commenced this action. In June 2008, they filed their first amended complaint, alleging nine different causes of action that had belonged to Lois when she died: (1) elder abuse (neglect, isolation, and deprivation of goods or services); (2) financial elder abuse; (3) breach of fiduciary duty (against Robert only); (4) breach of fiduciary duty (against all defendants); (5) aiding and abetting breach of fiduciary duty; (6) undue influence and duress; (7) false imprisonment; (8) civil conspiracy; and (9) negligence. The gist of their allegations was that defendants abused Lois physically and financially from May 2007, when she was admitted to the hospital on a psychiatric hold, until she died three months later.

---

[3] As the trial court noted, "[t]he only evidence before the court of Lois'[s] dispositive estate plan [wa]s her 1996 trust." Indeed, both the parties and the trial court appear to have proceeded on the assumption that all of Lois's property, including any causes of action she had when she died, became assets of the trust. We will do the same.

Plaintiffs alleged they had standing to commence and maintain the action under Welfare and Institutions Code section 15657.3, subdivision (d). Additionally, part of the relief plaintiffs sought in their complaint was a "judgment that the Defendants should be deemed to have predeceased [Lois] pursuant to . . . Probate Code [section] 259." That statute provides in relevant part as follows:

"(a) Any person shall be deemed to have predeceased a decedent to the extent provided in subdivision (c) where all of the following apply:

"(1) It has been proven by clear and convincing evidence that the person is liable for physical abuse, neglect, or fiduciary abuse[4] of the decedent, who was an elder or dependent adult.

"(2) The person is found to have acted in bad faith.

"(3) The person has been found to have been reckless, oppressive, fraudulent, or malicious in the commission of any of these acts upon the decedent.

"(4) The decedent, at the time those acts occurred and thereafter until the time of his or her death, has been found to have been substantially unable to manage his or her financial resources or to resist fraud or undue influence. [¶] . . . [¶]

"(c) Any person found liable under subdivision (a) . . . shall not (1) receive any property, damages, or costs that are awarded to the decedent's estate in an action described in subdivision (a) . . . , whether that person's entitlement is under a will, a trust, or the laws of intestacy . . . ."

Shortly after plaintiffs filed their first amended complaint, defendants moved for summary judgment on the ground that plaintiffs lacked standing. Defendants pointed out that subdivision (d) of Welfare and Institutions Code section 15657.3 gives standing to three types of persons to pursue an elder abuse action on behalf of a deceased elder: "[a]n intestate heir whose interest is affected by the action," "[t]he decedent's successor in interest, as defined in Section 377.11 of the Code of Civil Procedure," and "[a]n interested person, as defined in Section 48 of the Probate Code" (with certain exceptions not applicable here). (Welf. & Inst. Code, § 15657.3, subd. (d)(1).) Defendants asserted plaintiffs would have standing to pursue Lois's causes of action under this statute only if they could be deemed Lois's "intestate heirs," which

---

[4] Subdivision (d)(4) of Probate Code section 259 references the definition of "[f]iduciary abuse" "in Section 15610.30 of the Welfare and Institutions Code." Section 15610.30 of the Welfare and Institutions Code, however, defines the term "financial abuse." This appears to be merely a legislative oversight.

would happen only if Robert, Maggie, and Kate all were deemed to have predeceased Lois under Probate Code section 259. Defendants argued, however, that plaintiffs could not meet the requirements of Probate Code section 259 because they did not have any clear and convincing evidence that any of the defendants abused Lois, acted in bad faith, or was reckless, oppressive, fraudulent, or malicious.

In opposing the summary judgment motion, plaintiffs argued they had standing as "interested persons" under subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3 because they were beneficiaries of Lois's trust.

While the summary judgment motion was pending, plaintiffs moved to compel Kate to answer a number of questions her attorney had instructed her not to answer at her deposition. The trial court denied that motion.

Also, around this same time Robert filed a petition in the probate court seeking a determination that plaintiffs' elder abuse action constituted a "contest" of the trust in violation of the no contest clause in the trust and seeking to cancel their beneficial interests in the trust as a result. In July 2008, the probate court denied that petition and ordered Robert to pay plaintiffs the $10,000 Lois left to each of them within five days.

In subsequently ruling on the summary judgment motion in February 2009, the trial court agreed with defendants that plaintiffs would have standing only if Robert, Maggie, and Kate all were deemed to have predeceased Lois under Probate Code section 259. The trial court first determined plaintiffs were not Lois's "successors in interest" under subdivision (d)(1)(B) of Welfare and Institutions Code section 15657.3 and they did not qualify as "interested persons" under subdivision (d)(1)(C) of that statute just because Lois left them each $10,000 in her trust. In the court's view, to be an "interested person," plaintiffs had to have a property right in or claim against the trust estate that might be affected by the elder abuse proceeding, and since plaintiffs had already received their money from the trust "there is no property right or claim against the trust estate that may be affected by this proceeding." Thus, the trial court concluded "the only way plaintiffs have standing is via their claim they are intestate heirs due to violation by all defendants of Probate Code Section 259." (Boldface omitted.)

The court then explained as follows: "Since the court has determined that plaintiffs have standing only if they prove *all* of the Lickter defendants have committed elder abuse within the meaning of [Probate Code] Section 259, if it is determined that any one of the Lickter defendants did not commit elder abuse as a matter of law, then all motions for summary judgment are properly

granted." (Boldface omitted.) Focusing on Kate in particular, the court proceeded to engage in an exceedingly detailed analysis of "each fact presented by . . . Kate . . . in support of her motion, each fact presented by plaintiffs to dispute Kate's facts, and each additional fact presented by plaintiffs," as well as "each item of evidence set out in support of these facts." Ultimately, the court concluded there were no triable issues as to whether Kate committed financial abuse, and there was "no evidence, clear or convincing or otherwise, that Kate acted in bad faith regarding Lois's property or that she was reckless, oppressive or malicious in regard to said property." The court also concluded there were no triable issues as to whether Kate committed physical abuse, and there was no showing of "bad faith and reckless, malicious, oppressive, or fraudulent conduct" relating to any physical abuse of Lois. Finally, the court concluded there was no triable issue as to whether Kate committed neglect, and there was "no clear and convincing evidence or any inference therefrom that Kate acted in bad faith or was reckless, oppressive, fraudulent or malicious in the commission of any neglectful act."

Because the trial court found as a matter of law that the requirements of Probate Code section 259 could not be met as to Kate, Kate could not be deemed to have predeceased Lois under the terms of that statute, and therefore plaintiffs did not have standing as Lois's intestate heirs. Accordingly, the trial court granted summary judgment in favor of all defendants.

From the resulting judgment, plaintiffs timely appealed.

### DISCUSSION

### I

#### *Survival and Standing in Elder Abuse Cases*

Before we turn to plaintiffs' arguments on appeal, we begin with some basic legal principles about the survival of causes of action at death and standing to pursue those causes of action, particularly, those for elder abuse.

The general rule of survival is that "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." (Code Civ. Proc., § 377.20, subd. (a).) With respect to causes of action belonging to a decedent, the general rule about who succeeds to such a cause of action and who may prosecute such a cause of action is contained in section 377.30 of the Code of Civil Procedure, which provides as follows: "A cause of action that survives the death of the person entitled to commence an action

or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."

Code of Civil Procedure section 377.11 provides that " 'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." As relevant here, section 377.10 of the Code of Civil Procedure provides that the " 'beneficiary of the decedent's estate' " is (1) "the sole beneficiary or all of the beneficiaries who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under the decedent's will" "[i]f the decedent died leaving a will," or (2) "the sole person or all of the persons who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under [the laws of intestate succession]" "[i]f the decedent died without leaving a will."

 While section 377.30 of the Code of Civil Procedure generally governs who succeeds to a cause of action and who may pursue that cause of action upon the death of the person to whom it belonged, special standing rules found in the Welfare and Institutions Code govern who may pursue a cause of action for elder abuse that survives the elder's death. Specifically, subdivision (d)(1) of Welfare and Institutions Code section 15657.3 provides as follows:

"(d)(1) Subject to paragraph (2) and subdivision (e),[5] after the death of the elder . . . , the right to commence or maintain an action shall pass to the personal representative of the decedent. If there is no personal representative, the right to commence or maintain an action shall pass to any of the following, if the requirements of Section 377.32 of the Code of Civil Procedure[6] are met:

"(A) An intestate heir whose interest is affected by the action.

"(B) The decedent's successor in interest, as defined in Section 377.11 of the Code of Civil Procedure.

---

[5] Subdivision (e) of Welfare and Institutions Code section 15657.3 addresses the situation when "two or more persons . . . claim to have standing to commence or maintain an action for elder abuse."

[6] Subdivision (a) of section 377.32 of the Code of Civil Procedure provides that "[t]he person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under penalty of perjury under the laws of this state stating" various facts.

"(C) An interested person, as defined in Section 48 of the Probate Code, as limited in this subparagraph. As used in this subparagraph, 'an interested person' does not include a creditor or a person who has a claim against the estate and who is not an heir or beneficiary of the decedent's estate."

Additionally, subdivision (d)(2) of Welfare and Institutions Code section 15657.3 provides as follows: "If the personal representative refuses to commence or maintain an action or if the personal representative's family or an affiliate, as those terms are defined in subdivision (c) of Section 1064 of the Probate Code, is alleged to have committed abuse of the elder . . . , the persons described in subparagraphs (A), (B), and (C) of paragraph (1) shall have standing to commence or maintain an action for elder abuse. This paragraph does not require the court to resolve the merits of an elder abuse action for purposes of finding that a plaintiff who meets the qualifications of subparagraphs (A), (B), and (C) of paragraph (1) has standing to commence or maintain such an action."

## II

### Standing in This Case

Here, it appears undisputed that Robert, as the trustee of Lois's trust, was the "personal representative" of Lois to whom the right to commence or maintain this elder abuse action passed under subdivision (d)(1) of Welfare and Institutions Code section 15657.3. It also appears undisputed, however, that Robert could not be expected to commence or maintain an action against himself, and it is certainly undisputed that members of his family—namely, his daughters Maggie and Kate—were alleged to have committed abuse of Lois. Accordingly, under subdivision (d)(1) of Welfare and Institutions Code section 15657.3, plaintiffs had standing to commence or maintain this action as long as each of them qualified as: (1) "[a]n intestate heir whose interest is affected by the action," (2) Lois's "successor in interest, as defined in Section 377.11 of the Code of Civil Procedure," or (3) "[a]n interested person, as defined in Section 48 of the Probate Code."

The trial court concluded plaintiffs would have standing to pursue this action as "intestate heirs," provided that Robert, Maggie, and Kate all were deemed to have predeceased Lois under Probate Code section 259. We do not entirely agree with this conclusion. As we have noted, the trial court and the parties appear to have proceeded on the assumption that all of Lois's property passed into her trust. The trial court concluded that under the terms of the trust, if Robert, Maggie, and Kate all were deemed to have predeceased Lois, then Maggie and Kate's "issue [would] take by right of representation or they

[presumably, Maggie and Kate] can elect to name others as their beneficiaries. Absent issue or an estate, Lois would be considered to have died intestate. In that case, plaintiffs would be the next in line as intestate takers." (Fn. omitted.)

We disagree with the trial court's interpretation of the trust. Paragraph 6(c) of article I of the trust provided that if Robert "should predecease [Lois] the entire residue of the Trust Estate shall be distributed to [Maggie and Kate]." Paragraph 8 of that article provided that if Maggie and Kate died before turning 25, the property retained for them would be "distributed . . . to the beneficiary's children, or if there is none, to [Lois's] living children by right of representation . . . ." As we understand this provision (and as plaintiffs understand it, based on the allegations in their complaint) if Robert, Maggie, and Kate all died before Lois, then the residue of the trust estate would pass to plaintiffs *under the terms of the trust*, and not by means of intestate succession. In such a case, plaintiffs would not have standing to pursue Lois's causes of action as "intestate heirs" under subdivision (d)(1)(A) of Welfare and Institutions Code section 15657.3, but rather (as we will explain more thoroughly later) as Lois's "successors in interest" under subdivision (d)(1)(B) of Welfare and Institutions Code. What remains true, however, is that for plaintiffs to have standing to pursue Lois's causes of action under this reasoning, Robert, Maggie, and Kate all would have to be deemed to have predeceased Lois under Probate Code section 259. Plaintiffs' primary argument on appeal, though, is that they had standing to pursue this action even if Robert, Maggie, and Kate were *not* deemed to have predeceased them because they were beneficiaries of Lois's trust and thus "interested persons" under subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3. We now turn to that argument.

### III

*Plaintiffs Did Not Have Standing to Pursue This Action as
Beneficiaries of Lois's Trust*

Plaintiffs contend the trial court erred in concluding they did not have standing to pursue this action as "interested persons" under subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3 because they were beneficiaries of Lois's trust. We disagree.

Subdivision (d)(1)(C) and (2) of Welfare and Institutions Code section 15657.3 provide that "[i]f the personal representative refuses to commence or maintain an action or if the personal representative's family . . . is alleged to have committed abuse of the elder," "[a]n interested person, as defined in Section 48 of the Probate Code" "shall have standing to commence or

maintain an action for elder abuse."[7] Subdivision (a)(1) of Probate Code section 48 provides that " 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Subdivision (b) of Probate Code section 48 provides that "[t]he meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

Plaintiffs claim they qualify as "interested persons" because they "are without doubt beneficiaries of [Lois's] estate in that they were entitled to receive, and after the filing of the elder abuse action, did receive $10,000 specific bequests." Defendants, on the other hand, assert that to be an "interested person" under subdivision (a) of Probate Code section 48, a beneficiary (or any other type of person listed in the statute) must have "a property right . . . or claim . . . *which may be affected by the proceeding.*" (Prob. Code, § 48, subd. (a)(1), italics added.) In defendants' view, the $10,000 plaintiffs each received from Lois's trust did not "provide them with standing" as "interested persons" because "this limited interest in the estate was not affect[ed] by the [elder abuse] proceeding."

Plaintiffs counter by asserting that the closing phrase in subdivision (a)(1) of Probate Code section 48—"having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding"— cannot be read as qualifying all of the terms that precede it—that is, "heir, devisee, child, spouse, creditor, beneficiary, and any other person." In their view, the closing phrase qualifies only the term that precedes it immediately—"any other person"—and thus "an heir, devisee, child, spouse or beneficiary is always an 'interested person' under Section 48." (Underscoring omitted.)

As we see it, the issue framed by the parties' argument is this: Is a "beneficiary" of a trust an "interested person" under subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3 and subdivision (a)(1) of Probate Code section 48 if the elder abuse action the person seeks to commence or maintain will have no effect on the person's beneficial interest in the trust? As we will explain, we conclude the answer to that question is "no."

---

[7] Subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3 provides that " 'an interested person' does not include a creditor or a person who has a claim against the estate and who is not an heir or beneficiary of the decedent's estate." That limitation has no bearing here.

■ "We begin our discussion with the oft-repeated rule that when interpreting a statute we must discover the intent of the Legislature to give effect to its purpose, being careful to give the statute's words their plain, commonsense meaning. [Citation.] If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

Here, it is not readily apparent from the statutory language whether the Legislature intended the closing phrase of subdivision (a)(1) of Probate Code section 48 to apply only to the immediately preceding term ("any other person") or to all of the preceding terms in that subdivision. Because "we cannot resolve the issue through resort to the plain meaning rule, [we] must look elsewhere for guidance." (*Kavanaugh v. West Sonoma County Union High School Dist., supra*, 29 Cal.4th at p. 919.)

"We often rely on the canons of statutory construction to assist us in discerning the correct interpretation of statutory language." (*Kavanaugh v. West Sonoma County Union High School Dist., supra*, 29 Cal.4th at p. 919.) Here, plaintiffs rely on one such canon to support their interpretation of Probate Code section 48. Specifically, they claim that under the "last antecedent rule" the closing phrase must be understood as applying only to the immediately preceding term.

Under the last antecedent rule, " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191], quoting *Board of Port Commrs. v. Williams* (1937) 9 Cal.2d 381, 389 [70 P.2d 918].) There is an exception to that rule, however, which "provides that ' "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be applicable to all." ' " (*People v. Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644], quoting *Wholesale T. Dealers v. National etc. Co.* (1938) 11 Cal.2d 634, 659 [82 P.2d 3].)

Here, the phrase "having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding" is just as applicable to the more remote preceding terms—"heir, devisee, child, spouse, creditor, beneficiary"—as it is to the immediately preceding term— "any other person." Thus, plaintiffs' reliance on the last antecedent rule is misplaced because the exception to that rule applies here.

That the exception applies here instead of the rule is supported by the historical understanding of the term "interested person" in probate proceedings. Long before the definition of that term now found in Probate Code section 48 was added to the code in 1983 (see Stats. 1983, ch. 842, § 21, pp. 3024, 3027),[8] the concept of an "interested person" was well developed in California probate law. And as that concept was understood, it included the idea that the person had to have an interest of some sort that could be impaired, defeated, or benefited by the proceeding in question to be "interested" in that proceeding.

For example, in *Estate of Land* (1913) 166 Cal. 538 [137 P. 246], the California Supreme Court addressed "the question of what is meant by the words 'any person interested,' as used in [former] section 1327 of the Code of Civil Procedure, conferring the right upon any person interested to contest the validity of a will within one year after it has been admitted to probate." (*Estate of Land*, at p. 543.) In answering that question, the court explained as follows: "It may freely be conceded that if it is made to appear that a person has such an interest as may be impaired or defeated by the probate of the will, or benefited by setting it aside, he is a person interested. This would appear to be the common sense meaning of the term, and no good reason can be made to appear for giving it a broader or different meaning. . . . Our examination of the authorities leads us to the conclusion that this is the meaning generally attributed to such words by the courts." (*Ibid.*)

In a discussion particularly useful here, the court in *Estate of Land* went on to explain more thoroughly why an "heir" is not always an "interested person" for purposes of a will contest: "In Illinois it has been held that the term 'any person interested,' means 'those having a direct pecuniary interest affected by the probate of the will.' [Citation.] In a note to the case last cited in the American State Reports, this question is exhaustively considered, and many authorities are cited. In one or two cases in other states it appears to be intimated that heirs at law of a deceased are always 'persons interested' within the meaning of the term as used in such statutes. While as a rule, the heirs at law have such an interest as would entitle them to contest a will, as is said in the note referred to, 'but as the statute contemplates a legal interest and not merely a grievance to the feelings of propriety or sense of justice, it is not in every case that even an heir at law can contest the will of his ancestor.' " (*Estate of Land, supra*, 166 Cal. at p. 543.) The court summarized its conclusion as follows: "We have no doubt upon the proposition that ordinarily a petition showing that the contestant is an heir at law of the deceased, sufficiently shows the requisite interest to contest a will. As we

---

[8] Although this definition was not adopted in California until 1983, it can be traced to the original draft of the Uniform Probate Code from 1970. (Model Prob. Code, § 1-201, subd. (20).)

have seen, however, the heir at law may be without such right by reason of other facts." (*Id.* at p. 544.)

Thus, it has long been clear under California probate law that a person who can claim the title of "heir" is not necessarily an "interested person" for purposes of instituting or participating in a particular proceeding in a probate case. The question, rather, is whether the person—whether an heir, devisee, beneficiary, or other person—has an interest of some sort that may be impaired, defeated, or benefited by the proceeding at issue. (See *Estate of Land, supra,* 166 Cal. at p. 544.)

■ We have found no reason to conclude that this concept of an "interested person" applies any differently to probate proceedings other than a will contest. Similarly, we have found no reason to conclude that this concept was changed in any way by the enactment of Probate Code section 48 or by the application of Probate Code section 48 to elder abuse actions in subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3. Accordingly, we conclude the exception to the last antecedent rule, rather than the rule itself, governs the interpretation of subdivision (a)(1) of Probate Code section 48. Just as the status of "heir," by itself, is not enough to make a person an "interested person" under Probate Code section 48, so it is for the status of "beneficiary." Under subdivision (a)(1) of Probate Code section 48, a "beneficiary" must have "a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding" in order to be an "interested person" with respect to that proceeding.

Applying this definition of an "interested person" to an elder abuse action through subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3, it follows that to pursue such an action as a "beneficiary" of the elder's trust, the beneficiary must have "a property right in or claim against [the] trust estate . . . which may be affected by the" elder abuse action.

Plaintiffs contend reading subdivision (a) of Probate Code section 48 in this manner would render all of the included terms ("heir, devisee, child, spouse, creditor, beneficiary") except "any other person" a nullity, in contravention of one of the rules of statutory interpretation. (See *Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 [19 Cal.Rptr.2d 882, 852 P.2d 377] ["An interpretation that renders statutory language a nullity is obviously to be avoided."]; Code Civ. Proc., § 1858 ["In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."].) We disagree. It is true our interpretation of the statute means "any . . .

person" who has "a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding" is an "interested person." But our interpretation of the statute does not "omit" the other terms in the statute ("heir, devisee, child, spouse, creditor, beneficiary"); instead, it treats those terms as the Legislature obviously intended in light of the historical understanding of who is an "interested person"—that is, as illustrative of various types of persons who often will, but do not necessarily, have a property right or claim that may be affected by a proceeding.

Plaintiffs also contend that our interpretation of the statute "gives a personal representative precisely the kind of power over elder abuse claims that the Legislature sought to eliminate" because it "giv[es] a personal representative (or other person in a position of authority over the estate), the ability to terminate a plaintiff's standing by distributing a beneficial interest under a trust or will." This argument is based on the premise that under our interpretation of the statute, plaintiffs qualified as "interested persons" by virtue of their status as beneficiaries of Lois's trust up until the time they were paid the amounts due to them under the trust. This premise is not accurate, however.

■ Under Probate Code section 24, " '[b]eneficiary' means a person to whom a donative transfer of property is made or that person's successor in interest, and: [¶] . . . [¶] (c) [a]s it relates to a trust, means a person who has any present or future interest, vested or contingent." When plaintiffs commenced this action, which occurred before they were paid the amounts due to them under Lois's trust,[9] they qualified as "beneficiaries" of the trust because they each had a present, vested interest in receiving $10,000 from the trust. By the same reasoning, they each had "a property right in or claim against [the] trust estate." (Prob. Code, § 48, subd. (a)(1).) It does not appear, however, that their "property right in or claim against [the] trust estate" ever was one "which m[ight] be affected by" this elder abuse action. (Ibid.) Since there were sufficient trust assets to pay each plaintiff the $10,000 to which he was entitled under the trust instrument, regardless of whether any recovery was had in this action, plaintiffs' claims against the trust estate were not, and could not be, "affected by" the action.

In other words, contrary to plaintiffs' assertions, it is not true that Robert's payment of the $10,000 each plaintiff was owed from the trust terminated their standing to pursue this action as beneficiaries of Lois's trust. The fact is that plaintiffs' status as beneficiaries of Lois's trust never gave them standing to pursue this action because the beneficial interest they had in the trust estate was not one that could have been "affected by" this action.

---

[9] Plaintiffs commenced this action in October 2007. They were not paid the amounts they were owed under the trust until sometime after July 2008.

Plaintiffs contend that defendants' own conduct in seeking to invoke the trust's no contest clause against them shows they had an "interest [in the trust] affected" by the elder abuse action. We disagree. Whatever may have been the case before the bequests in the trust were unpaid, once Robert's attempt to have the probate court characterize the elder abuse action as a "contest" of the trust was defeated and plaintiffs were paid the money they were owed from the trust, plaintiffs did not have any property right in or claim against the trust estate that could be affected by the elder abuse action. Indeed, once they were paid what they were owed, they were no longer even "beneficiaries" of the trust because they no longer had any present or future interest in the trust—only a past interest that was already satisfied. (See Prob. Code, § 24, subd. (c).)

Plaintiffs contend that notwithstanding our interpretation of subdivision (a) of Probate Code section 48, a court has discretion under subdivision (b) of Probate Code section 48 to find standing in order to further the public policy in favor of encouraging people to report elder abuse and file elder abuse lawsuits. As we have noted, subdivision (b) of Probate Code section 48 provides that "[t]he meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

To support their argument regarding subdivision (b) of Probate Code section 48, plaintiffs rely heavily on *Estate of Lowrie* (2004) 118 Cal.App.4th 220 [12 Cal.Rptr.3d 828]. In *Lowrie*, the decedent had made herself the trustee of her trust, her son Sheldon the executor of her pour-over will and the first successor trustee of her trust, and her granddaughter Lynelle (daughter of Sheldon's sister) the successor executor and the second successor trustee. (*Id.* at p. 223.) Under the estate documents, Lynelle was to receive $10,000, her mother and other uncle were to receive the same, and Sheldon was to receive the remainder. (*Id.* at pp. 223–224.) If Sheldon did not survive the decedent, then Lynelle was to receive the remainder. (*Id.* at p. 223.)

After the decedent died (with an estate worth approximately $1 million), Lynelle filed a petition in probate seeking, among other things, damages from Sheldon for elder abuse. (*Estate of Lowrie, supra*, 118 Cal.App.4th at p. 224.) Sheldon's argument that Lynelle lacked standing to pursue the elder abuse case against him was rejected before trial, and the trial resulted in a finding that he was liable for elder abuse and was disinherited from the decedent's estate under Probate Code section 259. (*Estate of Lowrie*, at p. 225.)

On appeal, Sheldon argued Lynelle lacked standing because, as the trustee of the decedent's trust, he was the decedent's "personal representative" within the meaning of former subdivision (d) of Welfare and Institutions

Code section 15657.3. (*Estate of Lowrie, supra*, 118 Cal.App.4th at pp. 227–228.) At that time, the statute provided only that " '[u]pon petition, after the death of the elder . . . , the right to maintain an action shall be transferred to the personal representative of the decedent, or if none, to the person or persons entitled to succeed to the decedent's estate.' " (*Id.* at p. 227.) He also contended Lynelle was not a person " 'entitled to succeed to the decedent's estate' " within the meaning of the statute because she was "simply a beneficiary who was bequeathed $10,000" and would not succeed to the decedent's estate under the laws of intestate succession. (*Id.* at p. 228.)

The appellate court concluded that Sheldon's argument "ignore[d] Probate Code section 259 and the purpose of the Elder Abuse Act." (*Estate of Lowrie, supra*, 118 Cal.App.4th at p. 228.) The court pointed out that "if Sheldon predeceased decedent, Lynelle would become the successor trustee and the successor beneficiary to the remainder. Thus, Lynelle would become the person entitled to succeed to decedent's estate and Lynelle would have standing to bring this case." (*Id.* at p. 229.) In the court's view, "Lynelle's expectancy, i.e., her contingent interest, provides her with a strong incentive to pursue this action and gives her standing." (*Id.* at p. 230.)

Sheldon argued "Probate Code section 259 [wa]s irrelevant because disinheritance under the statute occurs only *after* a person is found to have been guilty of elder abuse, but standing must exist *at the time* the action is filed." (*Estate of Lowrie, supra*, 118 Cal.App.4th at p. 230.) The appellate court disagreed, stating as follows: "Were we to accept this rigid view, the purposes of the Elder Abuse Act could be eviscerated. Any definition given to Welfare and Institutions Code section 15657.3, subdivision (d) must be sufficiently elastic to fulfill the purposes of the Elder Abuse Act. A decision as to whether a person has standing may be intertwined with other issues in elder abuse cases. This approach is consistent with the one taken to determine who is an interested person entitled to file petitions for probate. . . . [¶] . . . [¶] Courts must interpret the standing provision in Welfare and Institutions Code section 15657.3, subdivision (d) to deter, not encourage [elder] abuse. If abusers gain control of an estate, they may not use a restrictive interpretation of standing as an escape hatch. In order to effectuate the purposes of the Elder Abuse Act and Probate Code section 259, standing must be given to Lynelle, who is the successor representative of decedent's estate. Any other conclusion would discourage interested persons from bringing elder abuse lawsuits and would ignore the legislative scheme." (*Estate of Lowrie*, at pp. 230–231.)

■ Plaintiffs contend that under subdivision (b) of Probate Code section 48 and the reasoning of *Lowrie*, they must be recognized as having standing to pursue this action because to do otherwise would defeat the public policy encouraging elder abuse lawsuits. We are not persuaded. First, we do not read

subdivision (b) of Probate Code section 48 as allowing a court to find standing in an elder abuse action even though the person asserting standing does not have "a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." In other words, we do not interpret subdivision (b) of Probate Code section 48 as providing an independent basis for determining who is an "interested person" separate and apart from the definition of that term set out in subdivision (a) of Probate Code section 48. Rather, subdivision (b) of Probate Code section 48 merely recognizes that whether a "particular person" will qualify as an "interested person" under the definition set out in subdivision (a) of Probate Code section 48 "may vary from time to time" depending on "the particular purposes of, and matter involved in, any proceeding." (*Id.*, subd. (a)(1).) Thus, for example, an "heir" may be an "interested person" for purposes of one proceeding (because he has an interest that may be affected by that proceeding), but not another (because he does *not* have an interest that may be affected by *that* proceeding). In short, we do not read subdivision (b) of Probate Code section 48 as allowing a court to characterize a person as "interested" in a particular proceeding even though that person does not have a "property right in or claim against a trust estate or the estate of a decedent which may be affected by th[at] proceeding." (*Id.*, subd. (a)(1).)

Second, while the decision in *Lowrie* certainly supported a liberal reading of former subdivision (d) of Welfare and Institutions Code section 15657.3, it is significant that in the wake of *Lowrie*, the Legislature amended the statute to its present form with the apparent intent of codifying *Lowrie*. (See Assem. Com. on Judiciary, Proposed Consent regarding Sen. Bill No. 183 (2007–2008 Reg. Sess.) as amended June 12, 2007, p. 6 ["This bill codifies Estate of Lowrie . . ."].) Effectively, the appellate court in *Lowrie* recognized that Lynelle should have standing to pursue her elder abuse claims against Sheldon because she was an "interested person" with respect to those claims in that she would become the person entitled to succeed to the estate (and thereby the proceeds of the elder abuse claims) if she prevailed on her claims. By expressly incorporating the definition of "interested person" from Probate Code section 48 into the amended version of subdivision (d) of Welfare and Institutions Code section 15657.3, the Legislature codified this result and reasoning. There is nothing in the Legislature's codification of *Lowrie*, however, to suggest the Legislature intended to sweep even more broadly and grant standing to pursue an elder abuse action to someone who, contrary to the terms of Probate Code section 48, has no "property right in or claim against a trust estate or the estate of a decedent which may be affected by th[at] proceeding." (*Id.*, subd. (a)(1).)

Here, when the trial court granted summary judgment, plaintiffs had no right in or claim to Lois's trust estate by virtue of their status as former beneficiaries of Lois's trust because all of the interest they had in Lois's trust

had been satisfied when they were each paid the $10,000 Lois left each of them. Thus, they were no longer beneficiaries of the trust, let alone beneficiaries with "a property right in or claim against [the] trust estate . . . which [could] be affected by the" elder abuse action. For this reason, the trial court did not err in concluding that they did not have standing as "interested persons" under subdivision (d)(1)(C) of Welfare and Institutions Code section 15657.3 in their role as beneficiaries of Lois's trust.

IV

*Plaintiffs Did Not Have Standing to Pursue This Action*
*as Lois's Successors in Interest Unless Probate Code*
*Section 259 Was Satisfied as to Robert, Maggie, and Kate*

Plaintiffs contend the trial court erred in concluding they did not have standing to pursue this action as Lois's "successors in interest" under subdivision (d)(1)(B) of Welfare and Institutions Code section 15657.3. As we will explain, we conclude plaintiffs could have been deemed Lois's successors in interest only if the requirements of Probate Code section 259 were met as to Robert, Maggie, and Kate. Because the trial court properly concluded there was no triable issue of fact as to whether the requirements of Probate Code section 259 were met as to Kate (as we will detail later in the opinion), there was no error.

■ Subdivision (d)(1)(B) and (2) of Welfare and Institutions Code section 15657.3 provides that "[i]f the personal representative refuses to commence or maintain an action or if the personal representative's family . . . is alleged to have committed abuse of the elder," "[t]he decedent's successor in interest, as defined in Section 377.11 of the Code of Civil Procedure" "shall have standing to commence or maintain an action for elder abuse." We have set forth section 377.11 of the Code of Civil Procedure and related statutes earlier in this opinion, and we have explained the generally applicable rules for survival and standing under those statutes. Reading all of the relevant statutes together, it is apparent that the "decedent's successor in interest" is the person to whom a particular cause of action that once belonged to the decedent passes under the laws governing the passage of a decedent's property.

While the cause of action belongs to the successor in interest, that person is not necessarily the person with standing to pursue the action. Under section 377.30 of the Code of Civil Procedure, the successor in interest is generally authorized to commence an action on the surviving cause of action only if there is no personal representative for the decedent. A different rule applies, however, in the context of an elder abuse action, because in that context

subdivision (d)(1)(B) and (2) of Welfare and Institutions Code section 15657.3 provides that the successor in interest may commence the action "[i]f the personal representative refuses to commence or maintain an action or if the personal representative's family . . . is alleged to have committed abuse of the elder." It still follows, however, that the "decedent's successor in interest" is the person to whom the cause of action passes under the laws governing passage of a decedent's property.

Here, plaintiffs contend they "are the 'sole' beneficiaries who succeeded to [Lois's] elder abuse cause of action" because "the beneficiaries under Lois'[s] estate plan were Robert, Jezra, and Josh," but "Robert is an alleged elder abuser who cannot fairly be seen as having succeeded to a cause of action to be brought against himself."

By "estate plan," we understand plaintiffs to be referring to Lois's trust, and by their assertion that they and Robert were "the beneficiaries under" that trust, we understand them to be referring to the fact that they and Robert were the only immediate beneficiaries of the trust, in that the trust document left $10,000 each to plaintiffs, with the remainder of the trust estate going to Robert. We will also assume (as plaintiffs apparently do) that any cause of action for elder abuse that Lois may have had at the time of her death passed into the trust. Under these facts, however, plaintiffs were *not*—as they contend—Lois's successors in interest with respect to her elder abuse causes of action, either by themselves or in combination with Robert. This is so because under the trust, plaintiffs succeeded *only* to the $10,000 left to each of them, and all the rest of Lois's property—including any cause of action for elder abuse she may have had—passed to the residuary beneficiary, Robert.

To the extent Robert may have succeeded, in this manner, to "a cause of action to be brought against himself," that fact alone did not disqualify him as Lois's successor in interest or transform plaintiffs into her successors in interest. Plaintiffs' reliance on *Estate of Bowles* (2008) 169 Cal.App.4th 684 [87 Cal.Rptr.3d 122] for the contrary proposition is misplaced. In *Bowles*, the plaintiff was a remainder beneficiary of a testamentary trust. (*Id.* at p. 688.) The plaintiff sued his father, who also was a beneficiary of the trust, and a third party, who was not, for inducing the trustee to sell trust property to the third party at less than fair market value. (*Id.* at pp. 688–689.) The appellate court concluded the plaintiff had standing to sue because his allegations brought him "within the rule that a trust beneficiary can pursue a cause of action against a third party who actively participates in or knowingly benefits from a trustee's breach of trust." (*Id.* at pp. 691, 694.)

Nothing in *Bowles* supports the proposition that "an alleged elder abuser . . . cannot fairly be seen as having succeeded to a cause of action to

be brought against himself." Certainly if the requirements of Probate Code section 259 are met, then a person who would otherwise succeed to a cause of action for elder abuse cannot "receive any property, damages, or costs that are awarded to the decedent's estate in [that] action . . . , whether that person's entitlement is under a will, a trust, or the laws of intestacy." (Prob. Code, § 259, subd. (c).) But this observation only leads to the conclusion that for plaintiffs to be considered Lois's successors in interest with respect to any elder abuse cause of action she may have had at her death, Robert, Maggie, and Kate all would have to be deemed to have predeceased Lois under Probate Code section 259, so that the cause of action passed to plaintiffs under the terms of Lois's trust. And this, of course, means the trial court ultimately was right in determining that for plaintiffs to have standing to pursue this action, there had to be at least a triable issue of fact as to whether the requirements of Probate Code section 259 were met.

## V

### *The Trial Court Did Not Improperly Shift the Burden to Plaintiffs to Raise Disputed Issues as to Their Conspiracy and Aiding and Abetting Causes of Action*

As we have noted, in their first amended complaint, plaintiffs set out nine different causes of action: (1) elder abuse (neglect, isolation, and deprivation of goods or services); (2) financial elder abuse; (3) breach of fiduciary duty (against Robert only); (4) breach of fiduciary duty (against all defendants); (5) aiding and abetting breach of fiduciary duty; (6) undue influence and duress; (7) false imprisonment; (8) civil conspiracy; and (9) negligence.

Plaintiffs claim the trial court erred because "in granting the [summary judgment] motion, the Court put the burden of raising disputed issues as to the conspiracy and aiding and abetting claims on the[m]." In their view, "the conspiracy and aiding and abetting claims" "were wholly unaddressed in Kate's moving papers or her separate statement of undisputed facts." Consequently, they claim, Kate "failed to make a prima facie showing as to those issues and, as a result, the burden never shifted to Plaintiffs to raise disputed issues of material fact as to the conspiracy and aiding and abetting claim[s]." (Italics omitted.)

Plaintiffs' argument fundamentally misapprehends the basis for defendants' summary judgment motions. Because defendants' motions were premised on plaintiffs' *lack of standing*, and not on defendants' inability to prove elements of their various causes of action, defendants did not have to "make a prima facie showing" as to plaintiffs' "conspiracy and aiding and abetting claim[s]." (Italics omitted.)

A defendant is entitled to summary judgment if he or she shows the action has no merit. (Code Civ. Proc., § 437c, subds. (a) & (c).) To demonstrate that an action has no merit, a defendant often will seek to establish that each cause of action alleged in the complaint has no merit, either because one or more of the elements of the cause of action cannot be separately established or because the defendant has an affirmative defense to the cause of action. (See *id.*, subd. (*o*).) It is possible, however, for a defendant to defeat an action on a motion for summary judgment without attacking each cause of action separately, for example, by showing the action has no merit because the plaintiff lacks standing. (See, e.g., *People v. $28,500 United States Currency* (1996) 51 Cal.App.4th 447 [59 Cal.Rptr.2d 239] [summary judgment on standing in civil forfeiture action].)

That is the approach defendants took here. Instead of seeking to separately attack each of the nine causes of action plaintiffs alleged in their complaint, defendants attacked plaintiffs' *standing* to pursue *any* cause of action that belonged to Lois when she died. Their attack was premised on Probate Code section 259, on the theory that unless plaintiffs could establish that Robert, Maggie, *and* Kate all were deemed to have predeceased Lois under the provisions of that statute, then plaintiffs would not succeed to Lois's causes of action and would therefore lack standing to pursue those causes of action.

As relevant here, Probate Code section 259 provides that where "[i]t has been proven by clear and convincing evidence that [a] person is liable for physical abuse, neglect, or fiduciary abuse of [a] decedent, who was an elder or dependent adult," "[t]he person is found to have acted in bad faith," and "[t]he person has been found to have been reckless, oppressive, fraudulent, or malicious in the commission of any of these acts upon the decedent," the person "shall be deemed to have predeceased [the] decedent to the extent" specified in the statute, which includes the provision that the person "shall not . . . receive any property, damages, or costs that are awarded to the decedent's estate in an [elder abuse] action . . . , whether that person's entitlement is under a will, a trust, or the laws of intestacy." (Prob. Code, § 259, subds. (a) & (c).)

Focusing on the elements of Probate Code section 259, defendants sought to establish in their summary judgment motions that plaintiffs did not have clear and convincing evidence that either Robert, Maggie, or Kate: (1) committed physical abuse, neglect, or fiduciary abuse of Lois; (2) acted in bad faith; or (3) was reckless, oppressive, fraudulent, or malicious. In an exhaustive 54-page decision focusing on the evidence against Kate, the trial court agreed.

Given that defendants' summary judgment motions were based on the premise that plaintiffs lacked standing to pursue *any* cause of action that

belonged to Lois because they could not show that Robert, Maggie, *and* Kate were disinherited under Probate Code section 259, defendants did not have to separately address "the conspiracy and aiding and abetting claims" in their "moving papers or . . . separate statement[s] of undisputed facts," nor did they have to "make a prima facie showing" as to those causes of action. (Italics omitted.) It follows, then, that the trial court could not have improperly shifted the burden to plaintiffs to raise disputed issues of fact as to those causes of action.

Furthermore, when the trial court pointed out in its ruling that plaintiffs did "not address the legal requirements of a conspiracy in their opposition," the court was not "put[ting] the burden of raising disputed issues as to the conspiracy and aiding and abetting claims on" plaintiffs. What the court was doing when it made that comment was addressing whether there was a triable issue of fact as to whether Kate was liable for neglecting Lois—part of its determination of whether the requirements of Probate Code section 259 were met as to Kate. The trial court observed that while "Kate participated in Lois'[s] care," "she was not the decision-maker." The court then concluded that "[p]laintiffs' attempts to overcome this evidence . . . by alleging a conspiracy fails to create a triable issue of fact and is not supported by the evidence." It was in *this* context that the court commented on plaintiffs' failure to "address the legal requirements of a conspiracy in their opposition."

In essence, then, the trial court concluded that defendants' evidence showed Kate was not liable for neglecting Lois and plaintiffs' attempt to create a triable issue of fact on that point "by alleging a conspiracy" failed because plaintiffs "present[ed] no conflicting evidence that Kate shared in any common plan or design to abuse Lois" or otherwise was part of a civil conspiracy to abuse Lois. There was no error in this aspect of the court's ruling.

### VI

### *The Trial Court Did Not Prejudicially Misunderstand the Effect of the Aiding and Abetting and Conspiracy Allegations*

In an argument conceptually related to the last one, plaintiffs assert that "[b]ecause the complaint alleged conspiracy and aiding and abetting, in order to determine that Plaintiffs could not prevail on their claim against Kate, the Court would have had to consider whether any of the Defendants committed an act of elder abuse and then determined, based on undisputed facts, that Kate had not conspired or aided and abetted that act. Here, however, the Court did just the opposite: adjudicating all claims by looking only to Kate's conduct."

Like plaintiffs' last argument, this argument is based on their erroneous assumption about the basis for defendants' summary judgment motions. As we have explained, defendants did not seek summary judgment on the ground that plaintiffs could not establish one or more elements of each of the causes of action alleged in their complaint. Instead, defendants sought summary judgment on the ground that plaintiffs lacked standing because they did not have clear and convincing evidence that Robert, Maggie, and Kate all had to be deemed to have predeceased Lois under Probate Code section 259.

Focusing on the elements of Probate Code section 259, Kate sought to show that plaintiffs did not have clear and convincing evidence that she (1) committed physical abuse, neglect, or fiduciary abuse of Lois; (2) acted in bad faith; and (3) was reckless, oppressive, fraudulent, or malicious. It may be that plaintiffs' allegations of aiding and abetting and civil conspiracy were relevant with respect to the first element under Probate Code section 259— that is, whether Kate was "liable for physical abuse, neglect, or fiduciary abuse of the decedent." (*Id.*, subd. (a)(1).) In other words, perhaps Kate could have been "liable for" abuse of Lois within the meaning of Probate Code section 259 even though that abuse was actually perpetrated by one of the other defendants, based on either an aiding and abetting theory or civil conspiracy theory. Even if this is true, however, plaintiffs do not argue, and we cannot conclude, that either aiding and abetting or civil conspiracy has any relevance with respect to the second and third elements of Probate Code section 259.

As we have explained, for a person to be deemed to have predeceased a victim of elder abuse under Probate Code section 259, it must be "proven by clear and convincing evidence" not only that the person is "liable for physical abuse, neglect, or fiduciary abuse of the decedent," but also that "[t]he person . . . acted in bad faith" and was "reckless, oppressive, fraudulent, or malicious in the commission of any of these acts upon the decedent." (Prob. Code, § 259, subd. (a).) Thus, even if the liability of the person for abuse under Probate Code section 259 can be premised on aiding and abetting abuse by another or on a conspiracy to commit the act of abuse, it still must be shown that the person who is liable for the abuse (1) acted in bad faith *and* (2) was reckless, oppressive, fraudulent, or malicious. As to these latter two elements of Probate Code section 259, plaintiffs fail to show that aiding and abetting and civil conspiracy have any bearing.

Thus, even if the trial court could be deemed to have misunderstood the effect of the aiding and abetting and civil conspiracy allegations on the application of the first element of Probate Code section 259 as to Kate, any such misunderstanding was not prejudicial because the trial court properly addressed the second and third elements "by looking only to Kate's conduct."

Specifically, the trial court concluded: (1) "there [wa]s no evidence, clear or convincing or otherwise, that Kate acted in bad faith regarding Lois'[s] property or that she was reckless, oppressive or malicious in regard to said property"; (2) there was no showing of "bad faith and reckless, malicious, oppressive, or fraudulent conduct" relating to any physical abuse of Lois; and (3) "there [wa]s no clear and convincing evidence or any inference therefrom that Kate acted in bad faith or was reckless, oppressive, fraudulent or malicious in the commission of any neglectful act." Notably, plaintiffs do not argue that the trial court erred in making any of these determinations.

In the absence of any evidence that Kate personally acted in bad faith *and* engaged in reckless, malicious, oppressive, or fraudulent conduct, the trial court correctly concluded there was no triable issue of fact as to whether Kate had to be deemed to have predeceased Lois under Probate Code section 259; she did not. And because Kate could not be deemed to have predeceased Lois, plaintiffs were not Lois's successors in interest, and therefore they did not have standing to maintain this action, and summary judgment was proper.

## VII

*Any Triable Issue of Fact as to Robert's Abuse of Lois Is*
*Irrelevant to the Basis on Which Summary Judgment Was*
*Granted*

Plaintiffs assert summary judgment was improper because there were triable issues of material fact as to Robert's abuse of Lois. Again, however, plaintiffs' argument misapprehends the basis for the summary judgment motions.

As we have explained, summary judgment was proper here because there was no evidence that Kate acted in bad faith and engaged in reckless, malicious, oppressive, or fraudulent conduct, and therefore no evidence on which to conclude Kate had to be deemed to have predeceased Lois under Probate Code section 259. Given this conclusion, it simply does not matter whether there was a triable issue of fact as to whether Robert committed elder abuse. Even assuming he did, and even further assuming that he acted in a manner so as to require that he be deemed to have predeceased Lois under Probate Code section 259, the fact that *Kate* could not be deemed to have predeceased Lois meant that *she,* and not plaintiffs, succeeded to Lois's causes of action. Thus, plaintiffs' lack of standing was established regardless of whether Robert was liable for abusing Lois.

## VIII

### *Motion to Compel*

Plaintiffs contend the trial court improperly denied their motion to compel Kate to answer questions at her deposition that her attorney instructed her not to answer because the lack of answers to those questions potentially deprived plaintiffs of the ability to raise disputed issues of material fact in response to defendants' summary judgment motions. We find no prejudicial error.

In their brief, plaintiffs do not identify the particular questions Kate refused to answer. All they do is indicate that the questions related to an e-mail message from Robert shortly before Lois's death that led Mary to inquire "as to 'our options' with respect to not treating and transporting Lois in the event Lois develops pneumonia or becomes dehydrated." According to plaintiffs, they "attempted to ask questions of Kate relating to Kate's state of mind and/or intent at the time of the email," but Kate refused to answer at the direction of her attorney. In plaintiffs' view, it was error not to compel Kate to answer these questions because "Kate's answers . . . could easily have led to the discovery of admissible evidence," specifically, "admissible evidence as to the conspiracy and aiding and abetting allegations against Kate."

" 'Management of discovery generally lies within the sound discretion of the trial court.' [Citation.] 'Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question.' " (*Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1396–1397 [115 Cal.Rptr.2d 137].)

The foregoing standard is highly deferential to the trial court; however, plaintiffs face an additional burden as well. Because plaintiffs did not seek writ review of the trial court's denial of their motion to compel, and instead sought review only on appeal from the judgment that followed defendants' successful summary judgment motions, they must show not only that the trial court erred, but also that the error was prejudicial; i.e., they must show that it is reasonably probable the trial court would not have granted summary judgment against them if the court had granted their motion to compel. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–802 [16 Cal.Rptr.3d 374, 94 P.3d 513] [discussing prejudicial error in civil cases].)

Plaintiffs have failed to make this showing. As we have suggested, the critical ruling of the trial court on summary judgment was that there was no

evidence Kate acted in bad faith and engaged in reckless, malicious, oppressive, or fraudulent conduct, and therefore she could not be deemed to have predeceased Lois under Probate Code section 259. Given this fact, to show prejudicial error in the denial of their motion to compel, plaintiffs would have to persuade us that had the trial court compelled Kate to answer the deposition questions about her state of mind and/or intent at the time of Robert's e-mail message before Lois's death, it is reasonably probable her answers would have constituted, or somehow led to, admissible evidence sufficient to raise a triable issue of fact as to whether Kate acted in bad faith and engaged in reckless, malicious, oppressive, or fraudulent conduct. Plaintiffs have not tried to do this. Instead, as we have noted, plaintiffs argue only that "Kate's answers to the questions asked could easily have led to the discovery of admissible evidence" "as to the conspiracy and aiding and abetting allegations against Kate." Under the circumstances of this case, this is not sufficient to demonstrate prejudicial error in the denial of their motion to compel.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.276(a)(1).)

Raye, Acting P. J., and Hull, J., concurred.

A petition for a rehearing was denied November 18, 2010, and appellants' petition for review by the Supreme Court was denied January 26, 2011, S188746. Moreno, J., was of the opinion that the petition should be granted.