Filed 3/14/14  Konstin v. Bomar CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANN ENID KONSTIN et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>THOMAS H. BOMAR et al.,<br><br>        Defendants and Respondents. | A137123<br><br>(San Francisco County<br>Super. Ct. No. PTR-10-294096) |

After Sydna Konstin died, her daughters Anne Enid Konstin and Sydna Christina Konstin sued their brother John Konstin and attorney Thomas Bomar for elder abuse and other related causes of action that had belonged to their mother.  The trial court sustained the defendants' demurrers to the operative second amended petition without leave to amend.  Among other things, the court concluded plaintiffs did not have standing to pursue an elder abuse claim because they do not have a cognizable interest in the property that is the subject of their claims as, even if these assets were returned to their mother's estate, the property would pass to a trust in which plaintiffs have no interest.

On appeal, plaintiffs contends the trial court erred in sustaining the demurrers without leave to amend because their mother's operative will cannot be construed to embody her intent that assets would pass to a trust procured by fraud and undue influence.  We affirm.

1

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

## I. Family History

Sydna and Constantine (Gus) Konstin both came to the United States as young immigrants. They married and founded a successful restaurant in San Francisco named John's Grill. Sydna Konstin died in July 2009. Plaintiffs are her daughters. Defendant John is the youngest son in the family.[2]

Over time, Sydna and Gus acquired several properties, including the restaurant and the land on which John's Grill sits, as well as residences on Portola Drive, Elizabeth Street, Vicksburg Street, and Duncan Street. Sydna also owned two pieces of real property in Mazatlan, Mexico. Gus did not have an ownership interest in these properties as he is not a Mexican citizen.

## II. History of the Konstin's Estate Planning

John is the currently acting successor trustee of the Konstin Family Trust (Trust), and has been acting in that capacity since May 28, 2009. The Trust was created by Sydna and Gus in 1986. Under the Trust, at the death of the first spouse, the estate would be divided into a Survivor's Trust and a Bypass Trust.[3] The surviving spouse was entitled to all income of the Survivor's Trust, plus net income and the right to invade the principal of the Bypass Trust. At the death of the survivor, the Trust estate was to be distributed equally to the couple's four children.

The Bypass Trust contained precatory language expressing the trustors' desire that after the death of the survivor, the children would care for Sydna's sister Eivin Pantoja. Additionally, any property passing to a beneficiary outside the Trust would reduce that beneficiary's future share of the Trust estate. Upon Sydna's death, the Bypass Trust became irrevocable.

---

[1] The facts stated here are taken from plaintiffs allegations in their second amended petition and attachments thereto.

[2] Another son, Lionel, is not a party to this suit. Gus also is not a party.

[3] The Bypass Trust is funded only by the property that the surviving spouse disclaims.

2

The Trust was amended in 1994, primarily with respect to the Bypass Trust. Under the amended Trust, a subtrust was created within the Bypass Trust for the benefit of Pantoja, to be funded by a property on Elizabeth Street. John's Grill would be distributed 60% to John, who would continue to manage the property. The remaining 40% was granted in equal shares to the three other children. The Ellis Street property, where John's Grill is located, would be distributed 50% to John and 50% in equal shares to the other children. John was given the right to purchase the remainder of John's Grill and Ellis Street for fair market value. At the same time, the Konstins entered into a will contract with John, which recited various considerations for his working full-time as a waiter and manager of John's Grill during his parents' lifetime, including that the parents could not amend their trust in any way that would reduce John's interest. Also in 1994, John became an agent on a power of attorney for both of his parents as individuals and as trustees of the Trust.

The Trust was amended in June 1999. By this time, Gus and Sydna were represented by Bomar, who also had represented the couple and John together in matters regarding the family businesses. The Trust was also amended in October 1999 (Amendment 3), 2000 (Amendment 2)[4], 2004 (Amendment 4), 2006 (Amendment 5), 2007 (Amendment 6), 2009 (Amendment 7). Plaintiffs assert that Sydna undertook the amendments in order to equalize distribution of the remaining assets to all her children and to protect against John's obtaining additional assets. Allegedly, the couple also engaged in an aborted attempt to amend the Trust in April 2009 (Konstin Dorchester Trust).

In July 2006, the Sydna and Gus transferred 100% of John's Grill and the Ellis Street property to John. The documents were prepared by Bomar, who purported to represent the interests of all the parties.

On March 13, 2008, Sydna and Gus deeded a property on Dorchester Way to John. Sydna had purchased the home with proceeds of a 2006 sale of a property in

---

[4] It appears the 1999 and 2000 Amendements may have been misdesignated.

Mazatlan, intending that Pantoja would reside there. John allegedly secretly took title to the property in his own name rather than in Sydna's name or in the name of the Trust, as Sydna reportedly had intended.

In May 2009, less than two months before her death from cancer, Sydna executed a new trust (the Restated Trust) that eliminated all the protections for Pantoja and the children, returning the plan essentially to what it was in 1986 but without taking into account the transfer of John's Grill and Ellis Street to John.

On September 3, 2009, John sent plaintiffs notice under Probate Code section 16061.7, subdivision (a)(1). The notification included a warning that an action to contest the Restated Trust had to be brought within 120 days from the date of service of the notification.

Plaintiffs subsequently learned that, following Sydna's death, John failed to inventory or appraise Sydna's assets and failed to file an estate tax return, allegedly to the detriment of the Trust and all of its beneficiaries. They estimate that the total currently due in tax, interest, and penalties is over $4.5 million.

## III. Present Litigation

### A. Initial Pleadings

On November 30, 2010, plaintiffs filed a petition to compel the trustee to account.

On May 12, 2011, plaintiffs filed a petition to remove the trustee for breach of fiduciary duty. They alleged claims for elder financial abuse, fraud, and concealment against John and Bomar, and prayed for orders determining ownership of real property and stock and imposing a constructive trust on all distributions to John and his immediate family.

On December 2, 2011, Bomar filed a motion for judgment on the pleadings.

On March 5, 2012, plaintiffs filed a first amended petition (FAP).

On April 4, 2012, Bomar filed a demurrer to the FAP. That same day, John also filed a demurrer to the FAP.

4

### B. The Second Amended Petition

On July 11, 2012, plaintiffs filed their second amended petition (SAP).   The SAP requests and alleges the following: (1) removal of trustee for breach of fiduciary duty (as to John),  (2) financial elder abuse (Welf. & Inst. Code, § 15610.30) (as to John and Bomar), (3) fraudulent concealment (Civ. Code, § 1710) (as to John and Bomar), (4) declaratory relief (Prob. Code, § 850) (as to John).

In the SAP, plaintiffs assert their standing as Sydna's "successors in interest" within the meaning of Code of Civil Procedure section 377.11, and that they also qualify as "interested persons" under Probate Code section 48.  While acknowledging Sydna had executed a pour-over will in 2009 that deposited all non-trust assets into the Survivor's Trust, they alleged both the will and also the 2009 Restated Trust were invalid as having been procured by fraud or undue influence.  Plaintiffs claimed Sydna's property instead would pass via a will executed in 2006 (Amendment 5), which disposed of her property as follows: "I give all of my estate in trust to the trustee then in office of THE KONSTIN FAMILY REVOCABLE TRUST of January 9, 1986[,] *as amended by and described in Amendment #5,* to be added to the trust and administered and distributed as *therein* provided."  (Italics added.)

The SAP further states: "Under Amendment 5 Sydna's separate property and all of her community property would pass to a bypass trust administered per the terms of that amendment, an irrevocable trust of which petitioners are beneficiaries.  In addition, under the terms of Amendment 5, a portion of Sydna's property will pass to the Pantoja Subtrust, an irrevocable subtrust of the bypass trust, of which petitioners are beneficiaries."  They also asserted interest and penalties owed on unpaid estate and gift taxes would impact their interest in the Bypass Trust.  Plaintiffs sought an order immediately removing John as trustee, setting aside the July 2006 transfers of John's Grill and Ellis Street, and imposing a constructive trust on assets wrongfully taken from Sydna.

### C. Demurrers

On July 27, 2012, John filed a demurrer to the SAP. He asserted plaintiffs lacked standing to assert claims that belonged to their mother, and that their claims to the Mazatlan proceeds were time-barred.

On August 6, 2012, Bomar also filed a demurrer to the SAP. He asserted plaintiffs lacked standing to bring an action for financial elder abuse, and that the cause of action for fraudulent concealment failed due to lack of standing, failure to present facts sufficient to state a cause of action, and because the claim is barred by the statute of limitations.

On September 10, 2012, the trial court filed its order sustaining Bomar's demurrer to the SAP without leave to amend as to the claims for financial elder abuse and fraudulent concealment.

On September 18, 2012, the trial court filed its order overruling John's demurrer as to the cause of action for breach of fiduciary duty alleged to be owed to plaintiffs individually as to the proceeds of the 2006 sale of the Mazatlan property.[5] As to all other claims asserted in the SAP, the court sustained John's demurrer without leave to amend.

On September 24, 2012, the trial court filed a judgment dismissing Bomar from the case. This appeal followed.[6]

---

[5] In their reply brief, plaintiffs request we issue an order correcting the trial court's order, which allegedly inaccurately reflects that the court ruled against them as to their claim of fraud based on the transactions involving the Mazatlan properties. We have already summarily denied their writ petition asking us for an order to require the lower court to exercise jurisdiction and clarify its order. (*Konstin v. Superior Court* (A139159).) We decline plaintiffs' invitation to reconsider our order denying their petition.

[6] Plaintiffs state that the order after hearing from which they appeal is not appealable as to John. John correctly notes that the order *is* appealable, in part. As none of the parties have advanced any objections to our consideration of the issues raised by plaintiffs in the present appeal, we will treat the appeal, insofar as it concerns any nonappealable orders, as a petition for writ of mandate and proceed on that basis. (See *Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1072.)

**DISCUSSION**

## I. Standard of Review

In evaluating a trial court's order sustaining a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In doing so, we accept as true all properly pleaded material facts, as well as facts that may be implied from the properly pleaded facts (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790), and we also consider matters that may be judicially noticed (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6). We do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Ibid.*) The plaintiff "bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law" and "must show the complaint alleges facts sufficient to establish every element of [the] cause of action." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "Because standing goes to the existence of a cause of action, lack of standing may be raised by demurrer … ." (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 813, disapproved on another ground in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.)

## II. Plaintiffs Lack Standing As To Claims Against Bomar

### A. The Parties' Contentions

We first address plaintiffs' appeal from the judgment dismissing Bomar from the case. The SAP alleges financial elder abuse and fraudulent concealment against both John and Bomar. The causes of action relate only to John's Grill and the Ellis Street property. The SAP alleges that the transfers of John's Grill and Ellis Street to John in 2006 were fraudulently procured by both John and Bomar. The SAP further alleges that Sydna's 2009 will is invalid as having been procured by unspecified fraud and undue influence. Plaintiffs claim they have standing based on their interpretation of Sydna's 2006 will because it requires property passing under the will to be distributed to the Bypass Trust according to the provisions of Amendment 5.

Bomar contends plaintiffs are seeking "a back-door method" to void the 2009 Restated Trust, despite their acknowledgment that they are prohibited from directly doing

so under the provisions of Probate Code section 16061.8. That statute bars any attack on the validity of a trust unless the action is brought within 120 days after notification by the trustee that the trust has become irrevocable. Bomar asserts the Restated Trust owns the claims they seek to make, and notes that Gus is the sole beneficiary of that trust. Resultantly, plaintiffs lack standing to assert their claims, either as "successors in interest" of Sydna under Code of Civil Procedure section 377.11, or as "interested persons" within the meaning of Probate Code section 48.

### B. Applicable Law

"The general rule of survival is that '[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period.' [Citation.] With respect to causes of action belonging to a decedent, the general rule about who succeeds to such a cause of action and who may prosecute such a cause of action is contained in section 377.30 of the Code of Civil Procedure, which provides as follows: 'A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, … and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.' (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 721-722 (*Lickter*).)

Code of Civil Procedure section 377.11 defines "decedent's successor in interest" as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." With respect to a decedent who has died leaving a will, the term "beneficiary of the decedent's estate" is defined to mean "the sole beneficiary or all of the beneficiaries who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under the decedent's will." (Code Civ. Proc., § 377.10, subd. (a).)

Additionally, there are special standing rules governing who may pursue a cause of action for elder abuse that survives the elder's death. Specifically, the right to bring an elder abuse action passes to the decedent's personal representative or, if there is none or if a personal representative is alleged to have committed the elder abuse, to the

8

decedent's "successor in interest" as defined in section 377.11 of the Code of Civil Procedure, or to an "interested person" within the meaning of Probate Code section 48. (Welf. & Inst. Code, § 15657.3, subd. (d).)

Probate Code section 48, subdivision (a)(1) provides that an "interested person" includes "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent *which may be affected by the proceeding*." (Italics added.) In *Lickter, supra,* the court held that the italicized language applies to each of the types of persons listed in Probate Code section 48, subdivision (a)(1). (*Id.* at pp. 731-732.) So construed, a beneficiary of a trust is not an interested person if the elder abuse action the person seeks to commence would have no effect on that person's beneficial interest in the decedent's estate or the trust's estate: "To be an 'interested person' for purposes of instituting or participating in a particular proceeding under Probate Code section 48—and, by extension, under subdivision (d) of Welfare and Institutions Code section 15657.3—the person must have an interest that may be impaired, defeated, or benefitted by the proceeding." (*Id.* at p. 718.)

### C. *Plaintiffs Lack Standing*

Plaintiffs make no claim of standing with respect to property that is in or owned by the 2009 Restated Trust. Their claim of standing is based on their contentions that: (1) Sydna's 2009 will is invalid; (2) the transfers of John's Grill and the Ellis Street Property to John in 2006 are invalid; (3) under Sydna's 2006 will, those properties would have to be distributed and administered as if the Trust, as it existed in 2006, still existed today; and (4) they were beneficiaries of the Trust as it existed in 2006, and therefore, qualify as "interested persons" within the meaning of Probate Code section 48 and Sydna's "successors in interest" under Code of Civil Procedure section 377.11.

We agree with Bomar that even if Sydna's 2009 will is invalid and even if she, at the time of her death, owned an interest in John's Grill and in the Ellis Street property, those properties would, under a proper construction of her 2006 will, pass to the 2009

9

Restated Trust, with Gus as the sole beneficiary. It is uncontested that plaintiffs are beneficiaries of the Bypass Trust only.

As noted above, the 2006 will stated: "I give all of my estate in trust to the trustee then in office of THE KONSTIN FAMILY REVOCABLE TRUST of January 9, 1986[,] as amended by and described in Amendment #5, to be added to the trust and administered and distributed as therein provided." In sustaining the demurrers, the trial court focused on the word "described" and the antecedent of "therein." The court ultimately determined that "described" referred to the documents that formed the Trust at that time, and that "therein provided" included subsequent amendments because Sydna did not foreclose the possibility of making subsequent amendments to the Trust. Plaintiffs assert the court erred, as the plain language of the 2006 will passes her estate to the Trust as it stood when Amendment 5 was drafted, in which they have an interest.

The flaw in plaintiffs' argument is that Amendment 5 expressly permits subsequent amendment. It states: "During the joint lifetimes of the Settlors, the Trust may be amended by a written instrument signed by both Settlors and delivered to the trustee(s)." Plaintiffs contend the will expressly states that all property is to be administered and distributed according to the provision in the Trust *as amended by* Amendment 5, and that therefore it is nonsensical to interpret it as directing the estate to be administered and distributed according to provisions pursuant to a subsequent amendment. Relying on Probate Code section 21102, *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 ["a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible."], and *Estate of Newman* (1964) 230 Cal.App.2d 158, 163 [it is to be presumed that a testator did not intend that which she might have said, but did not say, in the will]), they argue the trial court was obliged to determine Sydna's intent based on the actual language she used in her will, not on conjecture as to what she might have said but did not. Citing to *Estate of Newman, supra,* they argue "it is presumed that Sydna did not intend what she could have said but did not say." Ironically, that is just what they would have us do.

10

Sydna's 2006 will explicitly referenced Amendment 5, and that document explicitly states that the Trust could be amended. She had the opportunity to insert language barring any future amendments and making the Trust irrevocable, but she did not. Thus, we, in apparent concert with plaintiffs' stated rationale, are not inclined to engage in conjecture as to what she might have done, but did not do.

Plaintiffs further argue that the trial court's construction is inconsistent with Probate Code section 6300. That section validates pour-over will provisions, and provides that the property devised by a will to a trust passes pursuant to the trust as later amended "[u]nless the testator's will provides otherwise." (Prob. Code, § 6300.) The court found the will failed to otherwise provide because it does not expressly state that it "cannot be amended hereafter." Plaintiffs assert the statute does not require "express or magic words," nor does it state that the will must *expressly* provide otherwise. Here, plaintiffs do not point to any language supporting the interpretation that the language in Amendment 5 allowing for subsequent amendments to the Trust means *the opposite* of what it plainly states. In fact, the will does explicitly state an exception, but *only* if the Trust were to fail or be inoperative, in which case the estate was to be distributed "according to the terms of such trust instrument existing on July 31, 2006, the date I signed this Will, which terms are included in this Will by this reference." Plaintiffs do not argue that the Trust has either failed or become inoperative.

Finally, plaintiffs argue that, even if Sydna's will is interpreted as giving her property to the Trust "as thereafter amended," she could not have intended for her property to pass to an amended trust that was procured by fraud or undue influence. They cite to *Estate of Lowrie* (2004) 118 Cal.App.4th 220, 231 (*Lowrie*), for the proposition that "standing must be analyzed in a manner that induces interested persons to report elder abuse and to file lawsuits against elder abuse." In *Lowrie,* the appellate court reasoned that "the Legislature intended a broad definition of standing in the context of elder abuse cases." (*Id.* at p. 227.) Plaintiffs claim defendants have urged "a restrictive interpretation of standing in order to escape liability for their actions." However, the cause of action here is not lost as none of the parties dispute that Gus would

11

have had standing to bring a claim for financial elder abuse and fraud by concealment as he is clearly Sydna's "successor in interest." He is the sole beneficiary of the Restated Trust, as all her property goes into the Survivor's Trust. Accordingly, standing is not lacking; rather, it is plaintiffs who lack standing.

The same analysis applies to bar the claim against Bomar for constructive fraud because, again, plaintiffs do not qualify as Sydna's "successors in interest" under Code of Civil Procedure section 377.11. Having concluded that plaintiffs lack standing to maintain the asserted claims against Bomar, we need not address the parties' other arguments.

### III. Plaintiff's Lack Standing As To Claims Against John

#### A. Financial Elder Abuse and Fraudulent Concealment

For the reasons described above, we conclude the probate court did not err in sustaining John's demurrer as to plaintiffs' claims against him for financial elder abuse and fraudulent concealment.

Defendants demurred to the SAP alleging that, even if Sydna's 2009 will was invalid, any property passing under the 2006 will would nonetheless be poured into the 2009 Restated Trust because Amendment 5 does not foreclose subsequent amendments, and thus property would pass pursuant to the Trust as subsequently amended—i.e., by the 2009 Restatement. On appeal, John, like Bomar, asserts plaintiffs lack standing because they are neither intestate heirs nor "successors in interest" to Sydna, as her wills transferred her entire estate to the Trust. Even if their claims had merit, the property involved would pass to the Survivor's Trust, to which Gus is the sole beneficiary.

The same analysis that we have discussed above as to Bomar applies equally to the claims asserted against John for financial elder abuse and fraudulent concealment. Accordingly, the trial court did not err in sustaining John's demurrer without leave to amend as to the claims for financial elder abuse and fraudulent concealment.

#### B. Failure to File Tax Returns

The SAP alleges that John failed to appraise Sydna's assets following her death and failed to file an estate tax return to the detriment of the trust and all of its

12

beneficiaries. John demurred to these allegations on the grounds that plaintiffs had failed to state a claim in that the asserted tax liability was based on speculation because there were no allegations that the Internal Revenue Service had either taken or threatened to take any adverse action as to Sydna's estate. The trial court sustained the demurrer without leave to amend on the ground that any damages alleged were speculative because plaintiffs had not pled the existence of damages, but only the possibility of damages, which was not sufficient.

We concur with the trial court's conclusion. " '[D]amages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable. [Citation.]' [Citation.]" [Citation.] Also, "Allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer." [Citation.] On demurrer, the court does not " 'assume the truth of contentions, deductions or conclusions of law.' [Citation.]" [Citation.]" (*Shopoff & Cavallo LLP v. Hyon*, (2008) 167 Cal.App.4th 1489, 1509.)

John notes that plaintiffs previously argued, in opposing Bomar's demurrer to the first amended petition, that their cause of action for an alleged failure to advise Sydna to file a gift tax return had not accrued—and so was not time-barred—because they "will not have suffered actual harm until the IRS denies any discounts claimed on Sydna's estate tax return" and that "no actual injury has yet occurred." Plaintiffs have not alleged that the Internal Revenue Service has initiated any inquiries concerning Sydna's estate, much less taken any adverse action.

**DISPOSITION**

The orders as to both defendants' demurrers and the judgment (as to Bomar) are affirmed.

13

_____

Dondero, J.

We concur:

_____

Margulies, Acting P.J.

_____

Banke, J.