[No. B153616. Second Dist., Div. Four. Jan. 7, 2002.]

OSCAR MALDONADO et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.
ICG TELECOM GROUP, INC., Real Party in Interest.

COUNSEL

Manning & Marder, Kass, Ellrod, Ramirez, John A. Marder, Craig F. Bernesser and Scott Wm. Davenport for Petitioners.

No appearance for Respondent.

O'Melveny & Myers, Gordon E. Krischer, Hayley J. Kondon and Gabriel A. Sandoval for Real Party in Interest.

## OPINION

**CURRY, J.**—Petitioners Oscar Maldonado, J. Miguel Ibarra, Gustavo C. Gomez, and Faustino Boria brought a petition for writ of mandate seeking to overturn the order of the trial court denying their motions to compel further responses to discovery from real party in interest ICG Telecom Group, Inc. (ICG). We agree with petitioners that ICG's responses were inadequate, and issue a peremptory writ of mandate directing the respondent court to vacate its order denying petitioners' motions to compel further responses and enter a new and different order granting the motions.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioners brought suit against their former employer ICG, and codefendants Holly Horchover and Patricia M. Haley,[1] alleging employment discrimination. Petitioners apparently claim[2] that their termination or "coerced resignation" was tied to a policy of ICG's known as "footprinting," which petitioners describe as "the racially based segregation of Los Angeles into regions where sales and services would be provided by [ICG] and where sales and service would not be provided."

Petitioners submitted three deposition notices to ICG seeking to depose the person or persons most knowledgeable concerning the following subject areas: the reasons for terminating petitioners Gomez and Boria; the documents which supported the decision to terminate; the identity of persons

---

[1]Codefendants Horchover and Haley are not involved in this writ proceeding.

[2]Although the complaint was not made a part of the record submitted by petitioners, petitioners' counsel explained at the hearing on the motions to compel that "[t]he Hispanic people [such as petitioners] say they could not compete with the White salesmen, [because] they were barred from the areas where they grew up and areas of town where Hispanics live" as a result of the policy.

who participated in the decision; ICG's responses to petitioners' interrogatories; the area within Southern California where ICG makes sales or provides services; and any and all practices and policies regarding ICG's sales and service areas. The notices also asked that documents be produced from a number of categories, including personnel files, job descriptions, documents pertaining to petitioners' employment or termination which were not in the personnel files, correspondence between ICG and the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission involving petitioners, and documents pertaining to ICG's sales and service area or footprint.

In the period after petitioners were terminated or resigned, ICG underwent a financial reversal and is now in bankruptcy. It was forced to lay off a number of its employees "includ[ing] virtually all of Petitioners' [former] supervisors, as well as numerous human resources and management employees." ICG designated Patricia M. Haley as the person most knowledgeable concerning the employment matters. At the time of the depositions, she was the person in charge of human relations for the western regional states. According to her testimony, however, she had very little actual knowledge about the specific events that led to the terminations (or resignations) involved in the litigation. Nor did she seem to have knowledge about more general matters such as employment policies and the contents of personnel files. For example, she produced what appeared to be Gomez's personnel file, but was not willing to say for sure that it was, indeed, the personnel file. She did not know whether there were any other employment- or personnel-related documents not included in the file or who in the company might have that information. She did not know anything about Gomez's various positions with the company or why he was terminated. She heard about his termination after the fact, she did not remember from whom. Subsequently, she had a conversation with Horchover and Ibarra who said Gomez was terminated for "performance" but she had no specific information concerning what was deficient about his performance. She did not know if Gomez was out on injury leave when he was terminated or what ICG's policy was regarding termination of an injured employee. Questions were asked about ICG's interrogatory responses, particularly a response which identified persons with knowledge about the terminations, but Haley, who had verified the responses, had no idea what information any of the people listed might have had.

At her deposition as the person most knowledgeable concerning Boria's employment, Haley neglected to bring Boria's personnel file with her to the deposition or to review it before the deposition. She did not know anything about his employment history, although she had received his letter of

resignation.[3] She did not know whether it would have been possible to terminate an employee in his position without involving the human resources department.

Karen Sparrow and Robert Athey were designated as most knowledgeable concerning the footprint issues. They did not bring any documents to the deposition. Counsel for ICG stated that there had been difficulty putting together documents relevant to the request due to the bankruptcy, and that ICG was still in the process of "looking for said documents." The witnesses did not know what the footprint was for Los Angeles County in 1998 and 1999, whether it had substantially changed since then, whether any maps depicting the footprint existed, where any such maps might be found, or whether there was anyone at the company who would know the answers to the questions. They had general knowledge about the factors that went into deciding the limits of the footprint or sales and service area—such as estimated sales volume and the existence of technology support—but were unaware of whether any studies had been conducted to determine or predict whether the factors were favorable or unfavorable in a particular area.

After the depositions had concluded, petitioners brought motions to compel further responses with regard to all three depositions. Petitioners sought: (1) an order compelling ICG to provide further depositions of the person most knowledgeable regarding the various issues and to fully respond to all outstanding requests for documents; (2) an order that "[i]n the event the person most knowledgeable fails to provide discovery to any relevant line of inquiry, . . . defendants be precluded from introducing testimony at trial or asserting affirmative defenses as to matters to which they refused to disclosed [sic] information"; and (3) attorney fees for the cost of bringing the motions.

At the hearing on the motions to compel, the trial court indicated its belief that the footprint issue was irrelevant, stating that petitioners "don't need to do an investigation on the footprint" and that "[t]he footprint is out." The court told counsel that if at trial "your clients [petitioners] want to get up and say, 'our sales were lower than other people's because we wanted to sell in the Hispanic community and we were prohibited from doing so,' that's their own firsthand knowledge[,] fine[,] [l]et the company respond to that" but

---

[3]ICG repeatedly stresses the fact that Boria resigned suggesting that "Petitioner's counsel apparently initially did not know his case well enough to know that Boria had resigned . . . ." The questions asked at the deposition did not reflect ignorance, but were directed at determining whether there was a plan or threat to terminate Boria at the time of his resignation and whether that was known to Haley.

rejected counsel's argument that he needed to conduct discovery on what the company's response to such testimony might be.

The court further stated that "the defense was wrong in not reproducing for the deposition the documents that they say they had previously produced. . . . [Petitioners] had the right to ask the person most knowledgeable to bring in all of the documents that they felt are supportive." Nevertheless, the court denied all of the motions "with the exception that in any further depositions of the 'most knowledgeable,' the company is to produce all (as opposed to footprint) related documents for 1998-99 that it has or can find on a reasonable search including those previously produced."

A petition for writ of mandamus was filed on October 11, 2001, seeking a review of the trial court's order. By order dated October 25, 2001, this court instructed respondent to show cause why a peremptory writ of mandate should not issue ordering respondent to vacate the order and make a new and different order compelling real party in interest to search diligently for, and to produce at appropriate depositions, all available documents meeting the descriptions in the deposition notices and compelling deponents identified as most knowledgeable by real party to answer questions to the full extent of information known to the deponent or reasonably available to him or her. We stayed trial until this matter could be resolved.

DISCUSSION

I

Code of Civil Procedure section 2025, subdivision (d)(6), provides that if a deposition notice describes matters on which examination is requested, "the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent." As one treatise explains, "[t]he purpose of this provision is to eliminate the problem of trying to find out who in the corporate hierarchy has the information the examiner is seeking. E.g., in a product liability suit, who in the engineering department designed the defective part?" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 8:474, p. 8E-18.) The authors of the treatise explain that "[u]nder former law, the entity was required only to designate 'one or more' officers or employees to testify on its behalf. This permitted considerable 'buck-passing' and 'I don't know' answers at deposition." (*Ibid.*) Under the current law, "[i]f the subject matter of the questioning is clearly stated, the burden is on the

entity, not the examiner, to produce the right witnesses. And, if the particular officer or employee designated lacks personal knowledge of all the information sought, he or she is supposed to find out from those who do!" (*Id.*, ¶ 8:475, p. 8E-18.)

It is apparent from the record in this matter that the individuals selected by ICG to represent the company at the depositions knew very little about the topics specified in the notices. That is understandable since, as ICG explained, many of the employees who supervised or worked with petitioners are no longer employed by the company. What cannot be so easily overlooked was the cavalier attitude displayed at the depositions concerning information that should have been readily available to the witnesses. Haley, as a human resources manager, should, for example, have been able to identify a personnel file when one was shown to her—particularly since it was the personnel file she was asked to produce. In addition, she should have been familiar enough with the contents of the file that when a specific question was asked—such as when the subject employee was hired or terminated or what positions he held at various times—she could answer by referring to information contained in the file. Similarly, in her position, she should have had knowledge about general employment policies, such as the company's policy toward terminating workers who were out on disability because they were injured on the job, or whether termination decisions made in field offices had to be examined or approved by human resources personnel.

We are particularly concerned about the fact that the witnesses appeared at depositions at which document requests were made with no documents in their possession and no knowledge of whether or not documents responsive to the requests existed anywhere in the company's files. Certainly, no single person is expected to be familiar with the total contents of a corporation's files. When a request for documents is made, however, the witness or someone in authority is expected to make an inquiry of everyone who might be holding responsive documents or everyone who knows where such documents might be held. We are sympathetic to the fact that ICG's counsel was handicapped by the loss of personnel and the pending bankruptcy proceedings. But that did not justify appearing at the depositions without documents that were readily available, such as Boria's personnel file or the current footprint map, with no explanation as to whether other responsive documents existed or when they would be produced.

■ "Management of discovery generally lies within the sound discretion of the trial court." (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612 [56 Cal.Rptr.2d 341].) "Where there is a basis for the trial court's

ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was 'no legal justification' for the order granting or denying the discovery in question." (*Ibid.*, quoting *Carlson v. Superior Court* (1961) 56 Cal.2d 431, 438 [15 Cal.Rptr. 132, 364 P.2d 308].)

██ The trial court specifically found that petitioners "had the right to ask the person most knowledgeable to bring in all of the documents that they felt are supportive" and that "the defense was wrong in not reproducing for the deposition the documents that they say they had previously produced."[4] Thus, there was no basis for denying the motion to compel in this regard. ICG should have been ordered to bring their witnesses back to the depositions with the documents requested and with proof that the witnesses had undertaken some effort to familiarize themselves with the areas of their supposed "knowledge."

Concerning the footprint documents, the trial court's ruling was legally erroneous. Under the statute, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . , if the matter either is itself admissible in evidence *or appears reasonably calculated to lead to the discovery of admissible evidence.*" (Code Civ. Proc., § 2017, subd. (a), italics added.) The court agreed with petitioners that it was foreseeable that they would be permitted to testify concerning the existence of a racially motivated footprint and its effect on the loss of their jobs. The court further agreed that it was likely ICG would be permitted to counter this testimony with evidence of its own. Thus, there was no basis for denying petitioners an opportunity to conduct discovery pertaining to footprinting.

Ultimately, it is for the court that oversees the trial in this matter to determine whether evidence pertaining to footprinting or any other area of inquiry is relevant and admissible. In resolving a discovery dispute, the court is in no position to make that determination. It can only attempt to foresee whether it is possible that information in a particular subject area could be relevant or admissible at the time of trial. In this instance, the court found that evidence regarding footprinting might be relevant and admissible at trial. It should not, therefore, have foreclosed discovery in this area.

---

[4]Code of Civil Procedure section 2025, subdivision (d)(4), provides that a notice of deposition may include "[t]he specification with reasonable particularity of any materials or category of materials to be produced by the deponent." Subdivision (*o*) of that section states that "[i]]f a deponent fails to . . . produce any document or tangible thing under the deponent's control that is specified in the deposition notice or a deposition subpoena, the party seeking discovery may move the court for an order compelling that answer or production."

## II

Petitioners urge that, as a sanction, we instruct the trial court to issue an order precluding "defendants from introducing testimony at trial or asserting affirmative defenses as to matters to which they refused to disclose information" and further requests that "defendants" be precluded from "spring[ing] these witnesses" who no longer work for ICG on petitioners at trial. This would exceed the level of punishment justified under the facts and law.

First, we make clear who may be compelled to appear when the deposition notice seeks the person most knowledgeable within a corporation. The code states that a party can procure the attendance of an individual at a deposition by way of notice only if the prospective deponent is "a party to the action" or "an officer, director, managing agent, or employee of a party . . . ." (Code Civ. Proc., § 2025, subd. (h)(1).) "The attendance and testimony of any other deponent . . . requires the service on the deponent of a deposition subpoena under Section 2020." (§ 2025, subd. (h)(2).) The code applies by its language only to current officers, directors, managing agents, or employees. "Persons formerly affiliated with a party (e.g., former officers or employees) are not required to attend a deposition unless subpoenaed." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 8:518, p. 8E-26.4.) Therefore, ICG was not required to produce former employees in response to the notice just because the former employees are far more knowledgeable about the litigation than anyone currently employed by the company. ICG's duty is limited, as we have said, to producing the most knowledgeable person currently in its employ and making sure that that person has access to information and documents reasonably available within the corporation.

Moreover, sanctions involving issue preclusion are not generally imposed at this point in a discovery dispute. Under the statute governing depositions, where a party wrongfully fails to answer a question or produce a document requested pursuant to Code of Civil Procedure section 2025, and the party seeking discovery has gone to the court for relief, "[i]f the court determines that the answer or production sought is subject to discovery, it shall order that the answer be given or the production be made on the resumption of the deposition." (Code Civ. Proc., § 2025, subd. (*o*).) In addition, the court "shall" impose a monetary sanction "against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel answer or production" unless it finds that "the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*Id.*, 2d par.) It is only where a deponent "fails to obey an order entered under this subdivision" that the statute permits the court to

"make those orders that are just against the disobedient party, or against the party with whom the disobedient deponent is affiliated, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023." (§ 2025, subd. (*o*), 3d par.)

Some courts have held that the more serious sanctions may be imposed under Code of Civil Procedure section 2023[5] even where no specific order has been violated, but those cases have involved repeated and willful refusals to permit discovery or produce documents over a lengthy period of time which resulted in evidence becoming unavailable. (See, e.g., *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1618 [26 Cal.Rptr.2d 786]; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545-1546 [51 Cal.Rptr.2d 311]; *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 35-36 [9 Cal.Rptr.2d 396].) There is no evidence in our record of such egregious conduct.

Finally, we note that petitioners' discovery dispute is with ICG. An order restricting all defendants from interposing certain defenses or producing certain evidence would not be warranted unless petitioners show that the individual defendants are controlled by ICG.

Although we do not believe the current situation calls for imposition of an issue-preclusion sanction, a monetary sanction could well be warranted in view of the fact that the statute requires imposition of monetary sanctions unless the trial court finds that the party subject to sanction "acted with substantial justification" or that "other circumstances make the imposition of the sanction unjust." (Code Civ. Proc., § 2025, subd. (*o*).) Petitioners belatedly asked at oral argument that we impose a monetary sanction. This is the type of matter that should be directed to the trial court.

### DISPOSITION

The alternative writ and stay, having served their purpose, are hereby dissolved. Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 17, 2001, denying petitioners' motions to

---

[5]Section 2023 provides in pertinent part: "To the extent authorized by the section governing any particular discovery method or any other provision of this article, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process[] [¶] . . . a monetary sanction . . . [¶] . . . an issue sanction . . . [¶] . . . an evidence sanction . . . [¶] . . . a terminating sanction . . . ." (*Id.*, subd. (b)(1)-(4).)

compel further responses and enter a new and different order granting the motions. In addition, respondent court is to conduct further proceedings on the issue of whether a monetary sanction should be imposed. Petitioners to recover costs.

Vogel (C. S.), P. J., and Hastings, J., concurred.