Filed 4/11/25  Garcia v. Pacific Sunwear Stores CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| RUBY GARCIA,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>PACIFIC SUNWEAR STORES, LLC et al.,<br><br>     Defendants and Appellants. | B331888<br><br>(Los Angeles County Super. Ct. No. 22STCV36700) |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Seyfarth Shaw, Scott Mallery and Bradley Doucette for Defendants and Appellants.

Law Offices of Tina Locklear, Tina M. Locklear and Kelli M. Farrell for Plaintiff and Respondent.

————————————

Pacific Sunwear Stores, LLC and Pacific Sunwear of California, LLC (collectively, PACSUN) appeal from an order denying PACSUN's motion to compel Ruby Garcia to arbitrate her claims for disability discrimination, retaliation, and related causes of action under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), the Family and Medical Leave Act of 1993 (FMLA; 29 U.S.C. § 2601 et seq.), and the Labor Code. In ruling on the motion, the trial court excluded for lack of personal knowledge most of the declaration of PACSUN's vice president of human resources, who reviewed Garcia's employment records but did not work at PACSUN in 2016 when Garcia purportedly electronically signed the arbitration agreement. PACSUN contends the court erred in excluding significant portions of the declaration and finding PACSUN failed to meet its burden to authenticate Garcia's electronic signature. We find no error and affirm.

## BACKGROUND AND PROCEDURAL HISTORY

A. *Garcia's Complaint*[1]

On November 21, 2022 Garcia filed a complaint against PACSUN alleging 12 causes of action, including for retaliation in

---

[1] We grant PACSUN's unopposed motion to augment the record to include Garcia's complaint, PACSUN's motion to compel arbitration, Garcia's opposition, PACSUN's reply, Garcia's response to the reply, and PACSUN's reply in further response, which were filed in the trial court. (Cal. Rules of Court, rule 8.155(a)(1)(A).) According to PACSUN, it inadvertently failed to designate the documents, instead only designating the case register and trial court's final order.

violation of the FMLA; race and disability discrimination, retaliation, and related claims under FEHA; and misclassification and wage and hour claims under the Labor Code.

The complaint alleged Garcia began working for PACSUN in April 2016 as a human resources (HR) operations specialist. After her direct manager, Alex de Anda, left in 2021, Garcia reported directly to Hope Milligan, who started working at PACSUN in 2019. Garcia alleged Milligan mistreated her and refused to hire replacements for de Anda and another HR employee who left in 2021, causing Garcia to work long hours, often until 10 p.m. PACSUN changed Garcia's title to supervisor of HR operations without changing her job responsibilities in an effort to deprive her of overtime and meal and rest breaks. As a result of the long days and Milligan's mistreatment, Garcia suffered panic attacks, severe anxiety, sleeplessness, and depression. Upon the advice of her doctor, Garcia took FMLA leave from October 7, 2021 to January 7, 2022. On January 7 Garcia informed Milligan that she was still disabled and her doctor was extending her leave through March. PACSUN terminated Garcia's employment on January 18, 2022.

B.     *PACSUN's Motion To Compel Arbitration*

On December 22, 2022 PACSUN moved to compel arbitration and to stay the action. PACSUN argued Garcia's claims were covered by an arbitration agreement she electronically signed in 2016. Further, the arbitration agreement was not procedurally or substantively unconscionable. PACSUN

3

attached the arbitration agreement as an exhibit to a declaration from its attorney, Scott Mallery.[2]

The two-page arbitration agreement provided as to "**Claims Covered by this Agreement**":  "PACSUN and I mutually consent to the resolution by binding arbitration of all claims or controversies (collectively 'claims'), whether or not arising out of my employment or the termination of employment, that PACSUN may have against me or that I may have against PACSUN or against its officers, directors, members, employees, agents, benefit plans and plan sponsors, or affiliated companies."  The agreement covered a wide range of employment claims and claims for breach of contract, tort, and for "violation of any federal, state, or other governmental law, statute, regulation, or ordinance."

Garcia's full name and the last four digits of her social security number are typed at the bottom of the last page of the arbitration agreement, followed by an acknowledgement that reads:  "By initialing below, I acknowledge that I have carefully read this Agreement, and I understand its terms.  I further understand and agree, that I and PACSUN are waiving our right to have claims resolved by a court or a jury, and that all disputes between me and PACSUN must be resolved by binding arbitration as provided in this Agreement."  Below the

---

[2]    The trial court sustained Garcia's evidentiary objections to statements in Mallery's declaration that Garcia signed the arbitration agreement, as well as the attached arbitration agreement.  PACSUN does not challenge these rulings on appeal.  However, the arbitration agreement was later admitted as an attachment to Milligan's declaration.

4

acknowledgment are typed "Your Initials: <u>RG</u>" and "Date: <u>3/23/2016</u>."

In her opposition Garcia argued she never signed the arbitration agreement; PACSUN failed to authenticate the arbitration agreement; administrators routinely had employees' passwords and would login to employees' accounts; PACSUN "provide[d] no evidence detailing its security precautions regarding transmission and use of an employee's unique username and password"; and the arbitration agreement was procedurally and substantively unconscionable.

In her supporting declaration, Garcia averred, "I never signed an arbitration agreement with PACSUN before my employment, at the start of my employment, or during my employment." Garcia stated when she was hired, PACSUN was entering bankruptcy, and the HR department was "chaotic" and "consumed with the filing of bankruptcy." She denied seeing the 2016 arbitration agreement prior to filing her complaint, and she "did not sign or initial the arbitration agreement dated March 26 [*sic*], 2016." Garcia stated that she first signed PACSUN's employee handbook in 2017. Then on March 15, 2018 Garcia received an email from Sandy Renteria, vice president of HR, asking her to review and acknowledge four documents, one of which was an arbitration agreement. Garcia attached to her declaration Renteria's email, which included a link to the Employee Self-Service (ESS) Portal through which Garcia could "electronically acknowledge" the four documents. Garcia also attached an unsigned arbitration agreement and stated she "did not sign the 2018 arbitration agreement." Garcia elaborated that she was very familiar with PACSUN's procedures for distributing arbitration agreements and one of her duties as an operational

5

specialist was "to physically distribute the arbitration agreements." Thus, Garcia stated, she was "very familiar with [her] rights and [her] decision not to sign PACSUN's arbitration agreement at any time." Garcia added that "[p]rior to 2018 arbitration agreements were not sent electronically." In addition, Garcia's personnel file, which PACSUN sent her following her termination (at Garcia's request), did not contain an arbitration agreement.

Garcia further stated she "personally witnessed many people access the employee profiles and make changes therein—without employee authorization to do so." Garcia declared, "During my employment with [PACSUN], numerous people in HR, including myself, would routinely impersonate employees and login to employees' company accounts for various reasons." Garcia added, "I personally have accessed people's profiles at least 100 times to update their Social Security numbers or personal information. While I always received authorization before accessing an employee's profile, it was not necessary to do so to gain access." Garcia witnessed Renteria, three other employees, and the information technology (IT) team access employees' profiles "without authorization." Garcia claimed that "[o]nce logged into the employee'[s] account, it was possible to access all documents" and to "alter any documents."

In its reply, PACSUN argued it had properly authenticated the arbitration agreement by producing a valid, electronically signed agreement. It argued, based on a declaration it submitted from Milligan, that its third party vendor on March 23, 2016 sent Garcia an email with her username and temporary personal identification number (PIN), and Garcia was required to create a new and unique PIN. Garcia then had to initial all of the

6

electronic onboarding documents, including the arbitration agreement, before she could begin her employment on April 5, 2016.

Milligan stated in her declaration that she was PACSUN's vice president of HR and had previously served as a senior director of HR.  Milligan stated she based the facts in her declaration on her personal knowledge *or* her review of PACSUN's business records (including Garcia's employment records), which PACSUN maintained in the ordinary course of business.  Milligan averred, "Plaintiff's employment records reveal that the third party vendor sent Plaintiff an email with her username and a temporary password on March 23, 2016."  Milligan attached as exhibit 3 to her declaration what she described as Garcia's "new hire paperwork packet."  Milligan added that if Garcia "denie[d] assenting to the arbitration agreement, she must also deny assenting to numerous other policies contained within the new hire packet she signed on the very same day."[3]

Milligan also averred to the following statements, which were the subject of Garcia's evidentiary objections:  Milligan was familiar with PACSUN's electronic systems used to maintain personnel records.  In 2016 PACSUN adopted an onboarding process, which directed employees that they had to "provide [their] signature electronically . . . by placing [their] initials in a box."  Further, the onboarding system required employees to keep their personal password secure by not disclosing it to another

---

[3]     Although the trial court overruled Garcia's evidentiary objection to Milligan's statement that exhibit 3 was in PACSUN's file, it sustained Garcia's objection to the statement that Garcia's "initials 'adorn' the policies" attached as exhibit 3.

person.  Garcia affixed her initials to PACSUN's e-signature policy on March 23, 2016, as shown on exhibit 1 to Milligan's declaration.  Exhibit 1 was titled "**E-Signature**" and contained the typewritten initials "RG" and the date "3/23/216."  According to Milligan, "[n]ew employees receive their onboarding packet electronically from a third party vendor" (Equifax), which includes copies of all of PACSUN's policies, including the arbitration agreement.  Equifax provides the packet through "a secure internet portal," which it hosts.  Garcia was required to create a unique user name and password to access the portal and complete the onboarding paperwork.  PACSUN did not ask for and had "no way of determining the unique log-in credential of its employees, including [Garcia]."  In the spring of 2016, as part of the electronic onboarding system, Garcia signed an arbitration agreement "including [Garcia's] signature page," which Milligan attached as exhibit 2.  Exhibit 2 is the same agreement that PACSUN submitted with its motion bearing the initials RG and dated March 23, 2016.  Milligan averred that PACSUN's "business records reflect that [Garcia] electronically signed the Arbitration Agreement on March 23, 2016 at 4:57 pm."  In 2023 PACSUN's third party vendor HireXpress created a document, attached as exhibit 4 to Milligan's declaration, which contains an entry on page 2 for "Mutual Agreement to Arbitrate Claims" Saved" by "Ruby Garcia" at 4:57 p.m.

Garcia filed evidentiary objections to most of Milligan's declaration and exhibits (described in the prior paragraph) based on lack of personal knowledge, hearsay, inadequate authentication, and speculation, asserting that Milligan was not employed by PACSUN until 2019 (which PACSUN later

8

acknowledged).[4] The trial court sustained all but one of Garcia's evidentiary objections to Milligan's declaration.

C. *The Trial Court's Ruling*

After a hearing on June 28, 2023, the trial court denied PACSUN's motion to compel arbitration. The court found Mallery's declaration was insufficient to show the electronic signature on the arbitration agreement was an "act" by Garcia. The court also found "Milligan does not demonstrate that she has personal knowledge of the security precautions regarding the transmission and use of an employee's unique username and password in 2016" because Milligan did not work at PACSUN until 2019, and Milligan only broadly stated that she was familiar with the electronic systems that PACSUN used to maintain its personnel records. Further, the HireXpress document (exhibit 4) "appears to indicate that an arbitration agreement was 'saved,' it does not specify that such agreement was 'signed' by Plaintiff on March 23, 2016 at 4:57 p.m."

The trial court also noted Milligan failed to address Garcia's statements in her declaration that in 2018 an HR manager realized the ESS portal PACSUN was using "was

---

[4] Garcia's attorney filed a declaration attaching Milligan's social media profile. In her profile, Milligan indicated her employment with PACSUN began in November 2019. In its response, PACSUN acknowledged Milligan "did not begin working for Defendants until 2019." But PACSUN argued, "California law necessarily permits a party to testify based upon information 'known or reasonably available to' the declarant. Here, [Milligan] testified that she reviewed Plaintiff's available employment record to gain the knowledge necessary to testify to the matters relevant to the instant motion."

9

insecure, inefficient and flawed"; the ESS portal allowed HR staff to impersonate employees and login to employees' online profiles without authorization; Garcia witnessed individuals doing this; Garcia and HR staff routinely accessed employees' online accounts; and once individuals logged into the employees' online accounts, the staff could access and alter all onboarding and post-onboarding documents. The court concluded PACSUN failed to meet its burden to demonstrate the existence of an arbitration agreement with Garcia and denied PACSUN's motion to compel arbitration.

PACSUN timely appealed.

## DISCUSSION

A. *Authentication of Arbitration Agreements and Standard of Review*

Code of Civil Procedure section 1281.2 requires the trial court, with limited exceptions, to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . if it determines that an agreement to arbitrate the controversy exists." The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, and the party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense, such as unconscionability. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012)

10

55 Cal.4th 223, 236.)  "[T]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla*, at p. 972; accord, *Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 829.)

"The trial court determines whether an agreement to arbitrate exists 'using a three-step burden-shifting process.' [Citation.]  First, the party petitioning to compel arbitration must state 'the provisions of the written agreement and the paragraph that provides for arbitration.  The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference.' [Citations.] Signatures on the arbitration agreement need not be authenticated at this initial stage." (*West v. Solar Mosaic LLC* (2024) 105 Cal.App.5th 985, 992 (*West*); accord, *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*).)  "If the petitioner meets their initial burden, the burden of production shifts to the party opposing the petition to compel arbitration, who must offer admissible evidence creating a factual dispute as to the agreement's existence.  [Citation].  When the dispute centers on the authenticity of signatures, '[t]he opponent need not prove that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature.'" (*West*, at p. 992; see *Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 52 (*Garcia*).)

11

Civil Code section 1633.9, subdivision (a), which governs the authentication of electronic signatures, provides that an electronic signature may be attributed to a person if the signature "was the act of the person." Further, "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (*Ibid*; see *Garcia, supra*, 102 Cal.App.5th at p. 53; *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545 (*Bannister*).) "For example, a party may present evidence that the signatory was required to use a unique, private login and password to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions." *(Garcia*, at p. 53*;* accord, *Bannister*, at p. 547; *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1062 (*Espejo*).)

"With respect to the ultimate question whether an agreement to arbitrate exists, ""[i]f the court's order is based on a decision of fact, then we adopt a substantial evidence standard."' [Citation.] When, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law. [Citations.] "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" [Citation.] "'[U]nless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial

court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.'" [Citation.] "The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment. [Citation.] '"All conflicts, therefore, must be resolved in favor of the respondent."'"'" (*West, supra*, 105 Cal.App.5th at p. 993; accord, *Garcia, supra*, 102 Cal.App.5th at pp. 52-53; *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121.)

B.    *The Trial Court Did Not Abuse Its Discretion in Excluding Most of Milligan's Declaration and Attached Evidence for Lack of Personal Knowledge*

PACSUN contends the trial court erred in failing to consider Milligan's declaration and attached documents showing that Garcia electronically signed the arbitration agreement and other onboarding documents between 4:35 and 4:58 p.m. on March 23, 2016, and Garcia agreed to numerous other corporate policies by placing her electronic signature on those documents between 2:47 and 2:59 p.m. on April 5, 2016. The court did not abuse its discretion in sustaining Garcia's evidentiary objections.[5]

Evidence Code section 702, subdivision (a), provides as to lay witnesses that "the testimony of a witness concerning a

---

[5]    Garcia contends PACSUN forfeited its authentication argument by failing to address Garcia's evidentiary objections. However, PACSUN argues throughout its appellate briefs that the trial court erred in failing to consider Milligan's declaration and the attached documents.

13

particular matter is inadmissible unless he has personal knowledge of the matter." (See *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 948 [lay witness testimony is limited to matters within the personal knowledge of the witness]; *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 601 ["'In the absence of personal knowledge, a witness's testimony or a declarant's statement is no better than rank hearsay or, even worse, pure speculation.'"].) "A witness' personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony." (Evid. Code, § 702, subd. (b).) "'In order to have personal knowledge, a witness must have the capacity to perceive and recollect.' [Citation.] 'A witness challenged for lack of personal knowledge *must* nonetheless be allowed to testify *if there is evidence from which a rational trier of fact could find* that the witness accurately perceived and recollected the testimonial events.'" (*People v. Flinner* (2020) 10 Cal.5th 686, 741; accord, *People v. Lopez* (2018) 5 Cal.5th 339, 351-352.)

"When a witness's personal knowledge is in question, the trial court must make a preliminary determination of whether 'there is evidence sufficient to sustain a finding' that the witness has the requisite knowledge. (Evid. Code, § 403, subd. (a)(2).)" (*People v. Cortez* (2016) 63 Cal.4th 101, 124.) "An appellate court reviews a trial court's determination of this issue 'under an abuse of discretion standard.'" (*Ibid.*; accord, *People v. Lucas* (1995) 12 Cal.4th 415, 466 ["The decision whether the foundational evidence is sufficiently substantial is a matter within the court's discretion."].)

PACSUN contends Milligan obtained the requisite personal knowledge to authenticate Garcia's electronic signature because

14

she was an HR specialist with three years of employment at PACSUN prior to preparing her declaration, and she reviewed Garcia's employment records. But, as discussed, Milligan began working at PACSUN in November 2019, more than three years after Garcia purportedly placed her electronic signature on the arbitration agreement. Milligan failed to explain in her declaration how she gained personal knowledge of the electronic onboarding system PACSUN asserted was in place in 2016. Nor did she describe any communications she had with an Equifax employee (or anyone at PACSUN) to understand the security precautions that were taken in 2016 to ensure that only Garcia could access and electronically sign documents in the ESS portal. Thus, Milligan did not have personal knowledge with respect to her statement that in 2016 PACSUN required employees to access documents, including the arbitration agreement, through a secure internet portal operated by Equifax. Likewise, she had no basis for her averment that Garcia was required to create a unique username and password and to accurately enter her initials as part of the onboarding process. And Milligan did not provide a basis for her statement that PACSUN had "no way of determining the unique log-in credentials of its employees, including [Garcia]." The fact Milligan reviewed the documents in Garcia's employment file supported a statement that the arbitration agreement attached to Milligan's declaration was a true and correct copy of an arbitration agreement bearing Garcia's initials and a March 23, 2016 date, but not that Garcia placed her initials on the agreement on that date.

Moreover, PACSUN relies on a document created by third-party vendor HireXpress on May 3, 2023 (exhibit 4) that Milligan stated "reflect[s] that [Garcia] executed the mutual agreement to

15

arbitrate on March 23, 2016 at 4:57 p.m." PACSUN points to the same document to support its contention that Garcia electronically signed other onboarding documents on the same date between 4:35 and 4:58 p.m. But Milligan did not explain how HireXpress was involved in the 2016 electronic onboarding process (if at all) or how it generated exhibit 4. And, as the trial court noted, exhibit 4 only reflects that the arbitration agreement was "saved" on March 23, 2016 at 4:57 p.m., not that the agreement was electronically signed. PACSUN contends that pursuant to the onboarding instructions, "of course" exhibit 4 reflects that the arbitration agreement was "saved" because "it was saved after [Garcia] affixed her initials to the document per the final instructions, as required." But this is pure speculation—neither Milligan nor a HireXpress employee explained what a "saved" entry on exhibit 4 means. A saved entry could mean PACSUN saved the document to the portal or that the employee reviewed and saved the document without signing it. Accordingly, the court did not abuse its discretion in excluding most of Milligan's declaration.

PACSUN's reliance on *Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1398 (*Maldonado*), to avoid the evidentiary requirement that testimony be based on personal knowledge, is misplaced. In *Maldonado*, the plaintiffs in an employment action noticed the depositions of the employer's person most qualified (PMQ) in multiple areas, including the reasons for termination of the plaintiffs, the documents that supported the decision, and the identity of persons who participated in the decision; the notices also requested the PMQ produce all documents pertaining to the plaintiffs' employment or termination. (*Id*. at pp. 1392-1393.) The employer designated as its PMQ the person in charge of HR

16

for the western regional states, but at her deposition the PMQ had minimal actual knowledge about the terminations, the company's employment policies, or the contents of the plaintiffs' personnel files. (*Id.* at pp. 1393-1394.) The Court of Appeal observed that although the PMQ knew little about the specified topics, "[t]hat is understandable since, as [the employer] explained, many of the employees who supervised or worked with petitioners were no longer employed by the company." *(Id.* at p. 1396.) But, the court continued, the "[PMQ], as a human resources manager, . . . should have been familiar enough with the contents of the [personnel] file that when a specific question was asked—such as when the subject employee was hired or terminated or what positions he held at various times—she could answer by referring to information contained in the file," and she should have had knowledge about general employment policies. (*Ibid.*) The court issued a writ of mandate ordering the trial court to grant plaintiffs' motion to compel further depositions on the specified topics. (*Id.* at pp. 1399-1400.) However, the court rejected plaintiffs' request for issue sanctions because the employer "was not required to produce former employees in response to the notice just because the former employees are far more knowledgeable about the litigation than anyone currently employed by the company." (*Id.* at p. 1398.)[6]

PACSUN contends that Milligan, like the HR representative in *Maldonado*, should have been allowed to

---

[6] The *Maldonado* court pointed out that the predecessor code section governing PMQ depositions (now Code of Civil Procedure section 2025.230) "applies by its language only to *current* officers, directors, managing agents, or employees." (*Maldonado, supra*, 94 Cal.App.4th at p. 1398, italics added.)

submit testimony in her declaration based on documents in Garcia's personnel file. However, *Maldonado* addressed only the obligations of a PMQ at a deposition, not what testimony is admissible in a declaration or at trial. *LAOSD Asbestos Cases supra*, 87 Cal.App.5th at pages 947 through 949 is directly on point. There, the Court of Appeal held with respect to a declaration submitted by a corporate representative's PMQ to support its summary judgment motion that the PMQ was "simply a lay witness, and as such she was limited to matters as to which she had personal knowledge." (*Id.* at p. 947.) The court explained "[t]here is no exemption from the Evidence Code for a witness who has conducted an 'independent review'" and the Evidence Code "does not recognize a special category of 'person previously designated as most knowledgeable' witness." (*Ibid.*) We agree with the reasoning of *LAOSD Asbestos Cases* that the testimony of a corporate representative or designated PMQ is inadmissible under Evidence Code section 702, subdivision (a), if the individual lacks personal knowledge.

Finally, PACSUN argues as a matter of policy if courts do not allow the head of HR for a company to testify about employment practices in effect prior to her employment, "corporate defendants would never be able to adduce evidence supporting their defenses any time there is a change-over in human resources." Not so. PACSUN had options available to it, including submitting a declaration from an Equifax employee (or potentially HireXpress or another third-party vendor) knowledgeable about the operation and maintenance of the 2016 onboarding portal, who may have been able to authenticate Garcia's electronic signature by describing the ESS portal, the procedure for creation of an employee's unique username and

18

password, the steps an employee must take to sign documents in the portal, and the security precautions implemented in 2016. And, even if it would have been difficult for PACSUN to locate a knowledgeable person, that does not render Milligan's testimony admissible.

C. *The Trial Court Did Not Err in Denying PACSUN's Motion To Compel Arbitration*

In determining whether the party moving to compel arbitration has met its burden of proving the existence of an arbitration agreement, we apply the three-step burden shifting analysis, as set forth in *West, supra*, 105 Cal.App.5th at page 992 and *Garcia, supra*, 102 Cal.App.5th at page 51. The parties do not dispute PACSUN met its initial burden by attaching a copy the arbitration agreement to its motion. (See *West*, at p. 992; *Iyere, supra*, 87 Cal.App.5th at p. 755.) PACSUN contends the trial court erred in finding (1) Garcia's declaration created a factual dispute as to authentication, thereby shifting the burden back to PACSUN to authenticate Garcia's electronic signature, and (2) PACSUN failed to meet that burden. There was no error.

PACSUN argues the trial court erred by not considering *Iyere, supra*, 87 Cal.App.5th at page 756, which held that averments by the plaintiff employees that they signed a stack of documents on their first day of work but did not recall signing the arbitration agreement did not create a dispute as to the authenticity of the employees' "apparent handwritten signatures," and thus the burden did not shift back to the employer to prove the employees signed the agreement. The *Iyere* court observed that an "individual's inability to recall signing electronically may reasonably be regarded as evidence

19

that the person did not do so," but "[i]f the individual does not deny that the handwritten personal signature is his or her own, that person's failure to remember signing is of little or no significance." (*Id.* at p. 757.)[7]  Here, Garcia denied that she electronically signed the 2016 arbitration agreement (or any other arbitration agreement with PACSUN).  (See *Garcia, supra*, 102 Cal.App.5th at p. 52 [employee's "denial of signing an arbitration agreement is sufficient to shift the burden"]; *Bannister, supra*, 64 Cal.App.5th at p. 546 [substantial evidence supported trial court's conclusion the employer failed to authenticate electronic signature where employee attested "she never saw the arbitration agreement and never clicked 'I agree' or otherwise signed the arbitration agreement during the onboarding process"]; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067 ["Because [plaintiff] declared that she did not sign the Contract, however, [defendant] then had 'the burden of proving by a preponderance of the evidence that the electronic signature was authentic.'"].)

PACSUN further contends that even if the burden shifted back to it, PACSUN submitted sufficient evidence to authenticate

---

7       We disagree with *Iyere* that an employee's averment that he or she did not recall signing a physical arbitration agreement is insufficient to shift the burden to the employer.  (See *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 ["the opposing party may testify under oath or declare under penalty of perjury that the party never saw or does not remember seeing the agreement, or that the party never signed or does not remember signing the agreement" to challenge the authenticity of an arbitration agreement].)  But we need not address that issue here because this case involves both an electronic signature and a clear denial by the employee.

Garcia's electronic signature on the arbitration agreement, analogizing to the facts in *Espejo*, *supra*, 246 Cal.App.4th 1047. In *Espejo*, the Court of Appeal concluded the employer had authenticated the electronic signature of the employee on the arbitration agreement by submitting a declaration from the employer's systems consultant, who was tasked with "'maintaining and troubleshooting the online system'" for employment-related contracts. (*Id*. at p. 1052 & fn. 1.) As PACSUN points out, the consultant in *Espejo* "detailed [the employer's] security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement" and arbitration agreement. (*Id*. at p. 1062.) Further, the consultant concluded based on these procedures that the employee's name "could have only been placed on the signature pages of the employment agreement and the [arbitration agreement] by someone using [the employee's] unique user name and password." (*Ibid*.) The court explained these details in the consultant's declaration "establish[ed] that the electronic signature on the [arbitration agreement] was 'the act of' [the employee] (Civ. Code, § 1633.9, subd. (a)), and therefore provide[d] the necessary factual details to properly authenticate the document." (*Ibid*.)

The court in *Espejo* contrasted the details provided in the consultant's declaration with the declaration the Court of Appeal in *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*) found "'left a critical gap in the evidence supporting the petition.'" (*Espejo, supra*, 246 Cal.App.4th at p. 1061, quoting *Ruiz* at p. 844.) In *Ruiz*, the employer's business manager "summarily asserted" that the employee had electronically signed

21

the arbitration agreement and failed to explain how the employee's printed electronic signature and date and time next to the signature came to be placed on the agreement. (*Ruiz*, at pp. 843-844.) Further, the business manager did not state that only a person with the employee's name could have placed his electronic signature on the arbitration agreement by using a unique login ID and password or that the date and time printed on the agreement indicated when the agreement was signed. (*Id.* at p. 844.)

PACSUN urges us to find Milligan's declaration provided the details found sufficient in *Espejo*, in contrast to the inadequate business manager's declaration in *Ruiz*. Certainly Milligan provided many of the details that were absent in *Ruiz*, including how the 2016 onboarding system generally worked. But once these details are stripped from Milligan's declaration based on the properly sustained evidentiary objections, this leaves only Milligan's statements that (1) she was the vice president of HR at PACSUN and reviewed Garcia's employment records; (2) Garcia's employment records included an email from a third-party vendor dated March 23, 2016 that provided Garcia with a username and temporary password; (3) Garcia's records included a copy of her new hire paperwork, which Milligan attached as an exhibit; (4) many of the documents in the new hire paperwork (including the arbitration agreement) contained Garcia's typed initials and the March 23, 2016 date; and (5) and if Garcia "denie[d] assenting to the arbitration agreement, she must also deny assenting to numerous other policies contained within the new hire packet she signed on the very same day."

This evidence, absent any details about the 2016 electronic onboarding system and how an employee's initials would be

placed on documents in the ESS portal, is more akin to the insufficient declaration of the business manager in *Ruiz* than the consultant declaration in *Espejo*. Moreover, Milligan failed to explain what security measures were in place to ensure that only Garcia could access her ESS portal and place her name on the arbitration agreement. (See *Bannister, supra*, 64 Cal.App.5th at p. 547 [employer failed to authenticate electronic signature on the arbitration agreement because the employer's "evidence did not establish that [the employee] was assigned a unique, private user name and password such that she is the only person who could have accessed the onboarding portal and signed the agreement"].)

Because the trial court did not abuse its discretion in excluding most of Milligan's declaration based on lack of personal knowledge, the remaining conclusory evidence does not compel a finding that Garcia's electronic signature is authentic. Accordingly, the court did not err in denying PACSUN's motion to compel arbitration.

## DISPOSITION

The order denying PACSUN's motion to compel arbitration is affirmed. Garcia shall recover her costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.          SEGAL, J.